THE STATE EX REL. FRANK S. ANDREW *vs.* HENRY. G. LEWIS.

It is provided by the statute of 1878 (Session Laws of 1878, ch. 102), that any person claiming to·have been elected an officer of a town or city, but not so declared, may bring his petition to any judge of the Superior Court, alleging the facts on which his claim is founded, which shall be served on the other party, and that such judge shall hear such petition, and his decision thereon shall be conclusive; and, if in favor of the petitioner, that the certificate of the judge to that effect shall entitle him to the office. The present defendant had, upon such a proceeding, been placed in possession of the office of mayor of the city of New Haven. An information in the nature of a writ of quo warranto was· afterwards brought at the relation of the person ousted of possession of the office, alleging that he was elected by a plurality of votes to the office, and demanding by what right the defendant held it. The defendant in his return set up the proceedings mentioned, and averred' that the judge in that proceeding found and declared that a mistake was made in the counting of the votes in the third ward of the city by counting twice a package of eighty-one votes for the relator, a correction of which mistake gave the defendant a plurality of such votes, and that the judge gave him a certificate to that effect. The relator replied that there were mistakes made in the counting of the votes in all the other wards of the city, and that he was duly elected by a large plurality of votes. Held:—

1. That the legislature had full power to provide by law for the final determination of the office.

VOL. LI.—8.

State ex rel. Andrew *v.* Lewis.

mination by such a tribunal as it should think proper, of the question of the election of a city officer; and that the act was not unconstitutional in not providing for a trial by jury.

2. That upon the information and the pleadings upon it, it was not the duty of the court to order a re-count of the votes in all the other wards in which the relator averred that there were errors in the count; the averment being merely that there had been errors, without any allegation that they had been injurious to the relator or beneficial to the defendant.

3. That it was not enough that both the information and the replication alleged that the relator was elected by a plurality of votes; it was necessary after the defendant by his return had alleged facts sufficient to give him a title to the office, that the relator should answer the return and allege special facts which showed that he himself had the title.

4. That, the defendant holding the office under the certificate of the judge who heard his petition, and the statute making that decision conclusive, and the certificate final evidence of title, he could not be ousted by the proceedings under the information.

5. That the statute authorizing the proceeding by petition was not invalid by reason of the fact that the state was not a party by its attorney, and therefore the public, that had an interest, was not represented; the legislature, representing the state, having power to waive its rights and to authorize proceedings to which it should not be a party.

[Argued June 12th—decided July 13th, 1883.]

INFORMATION in the nature of a writ of quo warranto, filed by the State's Attorney at the relation of Frank S. Andrew, in the Superior Court in New Haven County, averring the election of the relator to the office of mayor of the city of New Haven, and the usurpation and exercise of the office by the defendant, and praying that process might be issued requiring the defendant to show by what warrant he held the office. A process was issued and served upon the defendant, who filed an answer in court, admitting his occupancy of the office, and averring that he was legally elected thereto, but was not declared to be elected; that under the statute providing for certain proceedings in such case he had applied to Judge PARK, one of the judges of the Superior Court, for a hearing upon the matter, service being made upon the relator; that the case was fully heard, the facts found, and a certificate issued by the judge declaring that he was duly elected to the office, which certificate was

by the statute made final evidence of such election, and was now offered to the court as the evidence of the defendant's title. The petition to the judge, which was set out in the answer, alleged that in one of the wards of the city eighty-one ballots were by mistake counted for Andrew for mayor which were not in fact cast, and that the correction of this error would give the election to the petitioner. The judge found this allegation true.

The State's Attorney filed the following replication : — That it is true that the defendant brought his petition before Judge Park as alleged, and that said judge issued a certificate as alleged in the plea of the defendant. But the Attorney says that gross inaccuracies and errors existed in the count and return of the ballots cast for mayor of said city at said election in every ward in said city, besides the third ward mentioned in said plea of the defendant, and that in the first ward of said city 673 ballots were cast at said election, and only 649 were counted as cast for mayor; that in the second ward of said city 875 votes were cast for mayor, and only 790 were counted for mayor ; that in the fourth ward 887 ballots were cast for mayor, and only 844 were counted ; that in the fifth ward 670 votes were cast for mayor, and only 651 were counted; that in the sixth ward only 716 votes were cast and returned as cast, and 722 votes were counted for mayor and returned as counted; that in the seventh ward only 1031 votes were cast for mayor, and yet 1109 votes were counted and returned for mayor ; that in the eighth ward of said city 622 votes were cast for mayor, and only 593 were counted and returned for mayor ; that in the ninth ward 923 votes were cast for mayor, and only 909 votes were counted ; that in the tenth ward 695 votes were cast for mayor, and only 635 votes were counted; that in the eleventh ward 593 votes were cast for mayor, and only 551 were counted ; and that in the twelfth ward 570 votes were cast for mayor, and only 548 votes were counted. And the said Attorney further says that seven ballots were cast at said meeting for F. S. Andrew, and were intended by the freemen who cast

the same to be cast for the relator, and said ballots so cast were cast for the relator by the name of F. S. Andrew, and ought in truth and right to be counted for said relator and were not counted for him. And said Attorney alleges that the relator received a larger plurality of the votes cast at said election for mayor, and that a large plurality of the votes cast at said election were cast for Frank S. Andrew for mayor of said city, and said Andrew was then and there duly elected to the office of mayor of said city of New Haven at said election for the full term of said office from the first day of January, 1883, to the first day of January, 1885. And so said Attorney says that the said Henry G. Lewis was not elected to the office of mayor of said city for the term aforesaid, as is in said plea supposed, and this said Attorney is ready to verify.

To this replication the defendant demurred, and the court (*Andrews, J.,*) held it insufficient and dismissed the information. The state appealed.

*T. E. Doolittle*, State's Attorney, for the state and the relator.

1. The certificate, to be conclusive, where the petition of the applicant is based upon an error in the count, must be based on a count of the entire number of ballots, and not of a part, cast at any election specified in the act. The person who is declared elected cannot bring a petition. It is only the person who claims to be elected, "but was not so declared," that can bring the petition; if he is declared elected he cannot move, and has no occasion to move, until the case is decided against him. It is impossible for him to know beforehand what a count of one ward will show, and if it happens to show an error, then the allegations of the petition must be found true and a certificate must issue and is conclusive. Now the statute did not contemplate a partial count of the ballots cast, and it is evident from the context of the original act which passed in 1879. The next preceding section of the act shows that. It provides that "all ballots" cast shall be returned to the box and

State ex rel. Andrew v. Lewis.

preserved; and that "such boxes" may be opened under authority of a judge of the Superior Court. The act was not passed to aid an attempt to defraud the will of the people, but to aid in ascertaining that will. Can it be a fair construction of this act for the court, at the request of one party, to look into one selected box out of a dozen, and without looking into any other give a certificate that is conclusive? If there is to be a re-count of the votes preserved it must be a re-count of "all the ballots" cast. The petition of Lewis was fatally defective in that it asked for a re-count in only one ward, as it was impossible for any one to tell, without a re-count of all the votes cast, who was elected by a plurality of ballots to the office of mayor.

2. If the certificate is to be conclusive, then the statute conflicts with the constitution, Art. 1, § 21, which provides "that the right of trial by jury shall remain inviolate." From time immemorial the rights of persons to an office have been determined by a jury on a writ of *quo warranto*. *State* v. *Tudor*, 5 Day, 329. Every case of *quo warranto* which has terminated by the pleadings in an issue in fact, has been tried by a jury, until the court was given power to try questions of fact. *State* v. *Norwalk & Danbury Turnpike Co.*, 10 Conn., 157. The city of New Haven was incorporated in 1784, and the office of mayor has existed from that time to the present, and the freemen of the city have elected their mayor in the manner provided by the charter of the city. It is true that the legislature can abolish the office, but it is equally true that until it has the person who is elected to the office "can enforce his right to the office and salary" by a writ of *quo warranto*. In the case of *The State ex rel. City of Waterbury* v. *Martin*, 46 Conn., 480, in a *quo warranto* to determine the title to the office of street inspector, the court says "he can enforce his right to the place and salary unless removed for cause." It was said in the court below that, as the writ was discretionary in England, a man could not have an absolute right to it. But the writ has never, in fact, been refused in England in a case like this. If

Andrew had, as is alleged, a plurality of the votes he had a right to this office and salary. That right can only be enforced through the medium of a court. High on Extr. Remedies, § 604. The constitution of the state provides (Art. 1, § 12,) that "all courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Every court in this country, when the question has arisen, has held that "due course of law" is synonymous with "due process of law." The due course (or process) of law in this case is a *quo warranto*. Since the adoption of the constitution the right of every person to have his rights determined in court has not depended upon the will of anybody. Any person aggrieved has a right absolutely guaranteed by that instrument to "due process of law" to enter the court to have his rights determined. Neither mandamus nor injunction are appropriate remedies. High on Extr. Remedies, § 623, says: "In this country, however, the jurisdiction in *quo warranto* has been most frequently exercised for the purpose of determining disputed questions of title to public office and for deciding upon the proper person entitled to hold the office and exercise its functions." There was no statutory regulation of the writ of *quo warranto* until 1821, after the adoption of the constitution, and that statute directs the Superior Court to punish the usurper of an office, and for that purpose may permit an information in the nature of a *quo warranto* to be filed at the relation of the proper party.

3. There is another aspect to this case. The title to this office depends upon the will of the people as expressed by their ballots. That expressed will must prevail and cannot be defeated by any action of the claimants, no matter what that action is. No agreement between the claimants that one or the other should enjoy the office can bind the people. No judgment by consent or default, whether with or without consideration moving from one party to the other, can bind the people. *Searcy* v. *Grow*, 15 Cal., 119. Under our

system of government, the right to inquire into the authority by which any person assumes to exercise the functions of a public office or franchise, is regarded as inherent in the people in the right of their sovereignty, and the title to office being derived from the will of the people, through the agency of the ballot, they are necessarily vested with a right of enforcing their expressed will by excluding usurpers from public office. Nor is this right in any manner impaired by statutes granting to electors, in their private capacity as citizens, the right to contest the election of any person assuming to exercise the functions of an office. Such statutes may have the effect of sharing the right with the elector, but they do not take away the right from the people in their sovereign capacity. *People* v. *Holden*, 28 Cal., 123; High on Extr. Remedies, § 624. No person who is not a party to the action can be bound by the judgment of any court, because he has never had his day in court nor an opportunity to be heard. *Starr* v. *Scott*, 8 Conn., 484; *Ranney* v. *Edwards*, 17 id., 317; *Bowler* v. *Eldridge*, 18 id., 10; *Parsons* v. *Lyman*, 32 id., 576. This suit is in the name of the people or the state, and for their interest, which is paramount to all others, and what is alleged in regard to Andrew as a relator is mere surplusage, and does not affect the validity of the information or the form of the judgment thereon. Cole on Informations, 196; *Commonwealth* v. *Fowler*, 10 Mass., 290; *Goddard* v. *Smithett*, 3 Gray, 116; *Attorney General* v. *Simonds*, 111 Mass., 256; *Commonwealth* v. *Hawkes*, 123 id., 525; *Commonwealth* v. *Allen*, 128 id., 308; *Wammack* v. *Holloway*, 2 Ala. (N. S.), 31. Even if the relator is barred or estopped by the certificate the people cannot be. *People* v. *Cook*, 8 N. York, 67, 82; *Hartt* v. *Harvey*, 32 Barb., 67; *People* v. *Hall*, 80 N. York, 117; *State* v. *Hardie*, 1 Ired., 42, 50.

*J. S. Beach* and *L. N. Blydenburgh*, for the defendant.

1. The statute under which the proceedings were had before Judge PARK, and by which the certificate issued by him is made final, is constitutional and valid. It is admitted

that such hearing was had and such certificate was issued to Mr. Lewis. The certificate has all the force and effect that the statute of 1878 can give it, and it is not the proceeding had, or the certificate issued under the law, which the relator must and does attack, but the law itself, and the power of the legislature to enact the law. Unless the statute is defective and unconstitutional, the certificate of election is by its terms conclusive. The corporation of the city of New Haven was created by the legislature and the office of mayor is an office of that corporation. The legislature has the power to appoint or remove the mayor, and may designate the method of election to that office, and the tribunal that shall finally pass upon and conclusively affirm and declare the same. Therefore, whatever the rule may be in relation to state or other officers not mentioned in the act of 1878, as to the office of mayor the act is valid. Cooley's Const. Limitations, 276 ; Dillon on Municip. Corp., §§ 109, 111, 139–144. It will be claimed that the act of 1878, and the proceedings had pursuant thereto, are no bar in this case, because the relator has the constitutional right to a trial by jury. We say again, that the mayor is the officer of a corporation created by the legislature, over whom the legislature has complete and absolute power, and that no right existing at the time of the adoption of the constitution is violated by the act of 1878. The legislature had and has absolute power to regulate and prescribe how the right to hold the offices of the corporation shall be determined. *Guile* v. *Brown,* 38 Conn., 237 ; *Selleck* v. *Common Council of South Norwalk,* 40 id., 359 ; *State ex. rel. Birdsey* v. *Baldwin,* 45 id., 134. The absolute right to a trial by jury in *quo warranto* proceedings in any case may well be questioned. The writ of *quo warranto* is not a writ of right. It is issued at the discretion of the court, and may be in the exercise of a like discretion at any time thereafter dismissed, whenever it is seen that no proper ground exists therefor. And while in many instances jury trials have been had in *quo warranto* proceedings, the constitutional right to the same is sufficiently doubtful to cause the court to hesitate

in declaring a beneficial statute unconstitutional by reason thereof; and if a right, it is one which, under the law, the exercise of the discretionary power of the court in dismissing the writ could render entirely useless and barren. Ang. & Ames on Corp., §§ 730, 737, 739; *Guile* v. *Brown*, 38 Conn., 242; *Newton* v. *Newell*, 26 Minn., 529, 533; *Ewing* v. *Filley*, 43 Penn. St., 384, 389, 390; Brightly's Election Cases, 144, 145; McCrary on Elections, §§ 288, 289. We therefore claim that when the statute provides the mode of contesting an election it must be followed, and *quo warranto* does not lie, especially in respect to an office like the one in question, in relation to which the statute provides another remedy and makes it conclusive. *Selleck* v. *Common Council of South Norwalk*, 40 Conn., 359; McCrary on Elections, §§ 285, 295; High on Extr. Remedies, § 617; *Dickey* v. *Reed*, 78 Ill., 261, 271; *State* v. *Stewart*, 26 Ohio St., 216.

2. The demurrer should be sustained, because the replication is insufficient, in that, while it admits the truth of the facts found by Judge Park, as by record appears, it does not specifically allege other facts which, if true, would change the result. And upon reading the immaterial allegation near the close of the replication "that a large plurality of the votes cast at said election were cast for Frank S. Andrew for mayor," the court will vainly seek in the allegations of fact anything to support the conclusion; the statement of which, unsupported by allegations of fact to warrant it, is defective and insufficient pleading. McCrary on Elections, §§ 281, 283; Brightly's Election Cases, 351; *State* v. *Townsley*, 56 Misso., 113; *Mann* v. *Cassidy*, 1 Brewst., 11; *Collins* v. *Huff*, 63 Geo., 207. While the replication alleges mistakes and errors, it nowhere alleges in whose favor they were, except in one instance, in the allegation that seven ballots were cast for F. S. Andrew and were not counted for the relator. That, if true, is not enough to change the result, with the truth of the finding of Judge Park admitted as it is by the pleadings, as by record appears; and that being true, and the court being bound by it for the purposes of the computation, the replication does not show or allege

affirmatively mistakes and errors that can be demonstrated to change the result, if such errors and mistakes are corrected. With the finding of Judge Park admitted to be true, if all the facts well pleaded in the replication are true, they would not warrant the opening of the boxes, even if that question was before the court. Every issue that can be tried in this case was or might have been tried or determined in the proceeding under the statute. No good reason exists for a re-trial of the case. It would be against precedent and vicious in its effect if permitted. *Webb* v. *Rocky Hill*, 21 Conn., 474.

PARK, C. J. The procedure in this case is an information in the nature of a writ of *quo warranto*, demanding of the defendant by what warrant he assumes to act as mayor of the city of New Haven; and alleging that, at the last city election, he, the relator, was duly elected to that office by a plurality of the votes cast for mayor. The defendant made return to the writ, setting forth his right and title to the office of mayor by proceedings had before a judge of the Superior Court, under the act of 1878 in relation to elections; and further representing that the judge found, and so declared, that a mistake was made in the counting of votes for mayor in the third ward of the city—that a package of eighty-one votes in that ward was counted twice for the relator, which gave him a nominal plurality of the votes cast at the election, and that a correction of the mistake gave the defendant a plurality of such votes; and that the judge so declared, and gave the defendant a certificate to that effect.

The relator replied to the return by way of confession and avoidance, setting forth that mistakes were made in the count of votes for mayor in all the other wards of the city as well as in the third ward, but made no allegation in whose favor the mistakes were made, although he alleged generally that the relator was duly elected mayor by a large plurality of the votes cast at the election.

The defendant demurred to the replication; the Supe-

rior Court sustained the demurrer, and adjudged the replication insufficient; and the case comes here for a review of that decision.

In the first place the relator makes complaint that the judge, who recounted the votes in the third ward of the city and corrected the mistake made therein, should have done the same in all the other wards, in order to ascertain who was elected mayor in fact, notwithstanding the petition confined the petitioner's inquiry to the mistake made in the third ward. The statute under which the judge proceeded to recount the votes in the third ward is as follows, so far as it is applicable to the present inquiry:—" Any person claiming to have been elected  \*  \*  mayor  \*  \*  of any city, but not so declared, may, within sixty days after the time of holding the election, bring his petition to any judge of the Superior Court, alleging the facts on which such claim is founded, which shall be served on the party against whom the claim is made at least six days before the return day, and returnable not more than sixty-three days after the day of such election, and such judge shall thereupon hear and determine such petition, and his decision thereon shall be conclusive, and if in favor of the petitioner, his certificate to that effect, under the seal of the court, shall entitle the petitioner to hold and exercise the duties and powers of such office."

Under this statute a petitioner must allege the facts on which his claim to have been elected is based, and he must prove those allegations by preponderance of evidence as in all other cases. If he claims that mistakes had been made in the counting of votes in some particular ward or wards of the city, the correction of which would change the result, he must make out a *primâ facie* case that such mistakes had been made before a recount of the votes in such ward or wards can be made. In such cases it will be presumed that the counting of votes in all the other wards of the city was correct, until the contrary appears. The respondent may lay the foundation by his answer and evidence for a recount of the votes in such other wards, if

mistakes to his prejudice therein had been made. These principles will be found to be fully sustained by McCrary in his work on Elections.

The petition before the judge of the Superior Court asks only for a recount of the votes cast for mayor in the third ward of the city. The respondent, fearing the result of a recount of the votes in the other wards, laid no foundation for such recount and made no claim that it should be made. The return of the votes cast for mayor in these other wards was therefore taken by the judge to be correct, and the case was decided accordingly. It would be unreasonable that a judge should be required to count all the votes of all the wards of a populous city, when no claim was made by either party that there were any mistakes to his prejudice in any of the wards but one. We think this claim is unfounded.

Again, the defendant insists that the allegations in the replication of the relator, that mistakes were made in the counting and returning of the votes for mayor in all the wards of the city, without stating that they resulted to his prejudice, or to the defendant's benefit, are clearly insufficient. It is manifest that this must be so. We may suppose that all those mistakes increased the nominal vote of the relator, and the supposition will not be inconsistent with the allegations. They are therefore clearly insufficient.

But it is said that there is a general allegation that the relator "received a plurality of the votes cast at the election." But this is a mere conclusion or inference from the preceding allegations of fact. If those allegations are insufficient to support such conclusion, then the conclusion is insufficient. Gould's Pleading, ch. 9, sec. 29; Stephen on Pleading, 142, note.

It is further said that it is competent for the prosecutor, representing the sovereignty of the state, to bring the defendant into court, and demand of him by what warrant he claims to be mayor, upon an allegation no more specific than the general one, that the relator received a plurality of the votes cast at the election for mayor. This may be true; but when the defendant, in obedience to the writ, comes

into court, and in his return puts his title to the office on record, the prosecutor must answer the return. He may demur to it as being insufficient; he may deny the facts therein stated; or he may admit the facts, and by way of confession and avoidance set up other facts. But the facts thus set up must be issuable facts. The prosecutor cannot at this stage of the proceeding attack the defendant's return by a repetition of the allegations of his original writ, that the relator had a plurality of votes. He must state facts which show that he had such votes, which he has failed to do in his replication. McCrary on Elections, secs. 280, 281, 283. We think therefore that the allegations of the replication do not sustain the averment that the relator was elected mayor of the city.

Again, we think the replication must be held insufficient for the reason that this information in the nature of a writ of *quo warranto* will not lie to oust the defendant from the official position which he holds, under the finding and certificate of the judge of the Superior Court, by virtue of the statute of 1878. That statute provides that "such judge shall thereupon hear and determine said petition, and his decision thereon shall be conclusive." If this statute is constitutional there can be no necessity for further consideration of the subject.

But the relator claims that the act is unconstitutional, inasmuch as it deprives him of the right to a jury trial to test his claim to the office of mayor; and here, perhaps, arises the most important question in the case.

It will be observed that the statute does not interfere in any manner with the rights and remedies of any claimant to any office recognized by the constitution. How the case would be if it did, it is unnecessary now to consider; and we shall therefore confine our attention solely to the question we have in hand.

The municipal corporation of the city of New Haven is unknown to the constitution. It was created by the legislature, and its municipal officers exist only as creatures of the legislature. Their official existence may at any time be

ended by a repeal of the charter creating the offices. *State ex rel. Birdsey* v. *Baldwin*, 45 Conn., 134.

Suppose the charter of the city had contained the provision of the act of 1878 in relation to contested elections for the office of mayor, could it be said that the provision was unconstitutional because it did not provide for a jury trial? If so, then it would be out of the power of the legislature to settle by enactment any controversy for any office in a city or town without providing a jury trial; which seems absurd.

Judge Dillon, in his treatise on Municipal Corporations, seems to be of the opinion that it is in the power of the legislature to provide in all cases how contested elections shall be determined. In § 200 he says,—" Since elections to offices are not in the nature of contracts, there does not seem to be any substantial reason, in view of the plenary authority of the legislature over offices and officers, to doubt its power to provide, prospectively by a general act, the mode in which contests shall be determined." If this may be said in states where all the authority of the legislature comes from their constitutions, with more force and greater emphasis may it be said where, as in this state, the power of the legislature is limited only by the constitution and it is silent on the subject. We think it is clear that the legislative department of the government of this state may appoint a tribunal vested with exclusive power to hear and determine questions of contested elections, without a trial by jury, when such contests originate between claimants to an office under a municipal corporation which the legislature alone has created. In the case of *Selleck* v. *Common Council of South Norwalk*, 40 Conn., 359, the legislature had enacted by way of an amendment to the charter of the city, that the board of councilmen shall be the final judges of the election returns and qualifications of its members. The question was, whether the amendment applied to an election which had been had when the amendment came in force. The court say:—" The statute in question was clearly intended to apply to cases of this kind. It makes the common council of the city the final judges of the election

returns and qualifications of its members. By the use of the word 'final' the legislature intended to divest the Superior Court of jurisdiction in such cases, and to make the common council the sole tribunal to determine the legality of the election of its members." No suggestion was made, either by court or counsel, that the amendment was unconstitutional because it deprived the petitioner of the right of a trial by jury.

But it is said that the controversy for the office of mayor before the judge of the Superior Court was a controversy between the relator and the defendant as individuals; and inasmuch as the office of mayor is a public office, the public have an interest in the controversy of which they cannot be deprived; and that as the statute in question makes no provision for the joinder of the public as a party to the proceeding, the decision of the court cannot be final; that it cannot deprive the public of the right to be heard by the writ of quo warranto or by a prosecution in the nature of such a writ.

The writ of quo warranto is a prerogative writ. It had its origin in England in efforts made by the sovereign to regain rights and franchises that he or his ancesters had parted with. The sovereign is the prosecutor, and to this day must be a party plaintiff in every such proceeding. In this country the state is the sovereign, and must be a party through its attorney. But the legislature, in whom all sovereign power is vested, limited only by the constitution, whereby it represents the sovereign, enacted this statute, which declares that the decision of the tribunal therein established shall be conclusive. The state, therefore, has voluntarily parted with the right to be heard by the writ of quo warranto or by a prosecution in the nature of such a writ. We think this claim is likewise untenable.

In conclusion we say, in the language of the court in the case of the *Hartford Bridge Co. v. Union Ferry Co.*, 29 Conn., 210,—" It is a well settled principle of judicial construction, that before an act of the legislature ought to be declared unconstitutional, its repugnance to the provisions

or necessary implications of the constitution should be manifest and free from all reasonable doubt. If its character in this regard be questionable, then comity and a proper respect for a co-ordinate branch of the government should determine the matter in favor of the action of the latter."

There is no error in the judgment appealed from.

In this opinion the other judges concurred; except GRANGER, J., who dissented.