PATRICK COUGHLIN vs. JAMES H. McELROY.

Third Judicial District, New Haven, June Term, 1899.  ANDREWS, C. J.,
          TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Section 9 of the election law (Public Acts of 1897, Chap. 213) provides
    that no ballot shall be counted which contains any mark or device
    whereby it may be identified so as to indicate who might have cast
    it; and § 12 prescribes that all ballots cast in violation of the pro-
    visions of the Act shall be void, but that any voter may alter or
    change his ballot by erasing any name or names therefrom, or by
    inserting in place of any name or names thereon, in writing or by a
    paster, the name of any person other than the candidate named.
    *Held* that the alteration of a ballot by erasing the name on a paster
    and restoring the name originally printed on the ballot, either by
    writing or by a superimposed paster, did not violate any express or
    implied prohibition of § 12, and did not render the ballot void under
    § 9, as containing a distinguishing mark, unless it appeared that the
    change was made for a corrupt purpose.
Marks upon the face of ballots which appear or are shown to have been
    made accidentally and not for the purpose of indicating the voter,
    and changes for the existence of which a reasonable explanation
    consistent with honesty and good faith either appears upon the face
    of the ballot or is shown by proof, do not render the ballots void
    under § 9 of the Act.
Where there is no ambiguity upon the face of the ballots actually cast
    for one residing in the voting district who is eligible to the desig-
    nated office, extrinsic evidence is inadmissible to show that they
    were intended to be cast for another person.

Argued June 6th—decided July 12th, 1899.

PETITION for a recount of votes and for a decree adjudg-
ing the election of the petitioner as collector of the city
of Bridgeport, brought to and tried by the *Hon. Ralph
Wheeler*, a judge of the Superior Court, who found the
facts and rendered judgment for the respondent, from which
the petitioner appealed for alleged errors in the rulings of
the judge. *Error and judgment reversed.*

As the result of a recount of the votes in all the voting dis-
tricts of the city of Bridgeport except the fifth and ninth,
the ballot boxes of which two districts sufficient cause was

not found for reopening, and by taking, in those two districts, the results as disclosed by the counters' certificates, it is found by the trial judge that the petitioner received 5,031, and the respondent 5,053, votes for the office of collector of the city of Bridgeport.

The following further facts were found: "13. At said election the petitioner's name appeared on the regular Democratic ticket as a candidate for collector, and the respondent's name appeared on the regular Republican ticket as the candidate for said office. 14. Not included in the above 5,031 votes counted for the petitioner, were 38 ballots having characteristics as follows: (*a*) There was one ballot bearing the party name 'Democratic,' on which the name of 'James H. McElroy' was pasted over the name 'Patrick Coughlin,' printed on the ballot, but the name 'James H. McElroy' had been erased with ink or pencil and the name 'Patrick Coughlin' had been written on the ballot at the right, opposite the name of James H. McElroy on the paster and of the name Patrick Coughlin printed on the ballot. (*b*) There were four ballots bearing the party name 'Democratic,' on which was a paster bearing the name 'Patrick Coughlin,' which paster was pasted over another paster bearing the name 'James H. McElroy,' and with both such pasters pasted over the name 'Patrick Coughlin' originally printed on the ballot. (*c*) There were several ballots bearing the name 'Democratic,' each with a paster bearing the name 'Patrick Coughlin,' which paster was pasted over another paster or part of another paster, and with both such pasters or parts of pasters pasted over the name 'Patrick Coughlin,' printed upon the ballot. In these instances it was impossible to determine the name on the intermediate paster or part of a paster. (*d*) There were several ballots bearing the name 'Democratic,' each with a single paster bearing the name 'Patrick Coughlin,' which paster was pasted over the name 'Patrick Coughlin' printed upon the ballot. On one or two of these ballots there were indications that a paster which had been placed over the name 'Patrick Coughlin,' had been pulled off, and the paster for Patrick Coughlin then pasted over the

name 'Patrick Coughlin,' printed on the ballot.   15. Of the 38 ballots thus described, five were cast in the first district, nine in the second district, three in the fourth district, two in the sixth district, one in the seventh district, two in the eighth district, four in the tenth district, three in the eleventh, and nine in the twelfth district.   16. Not included in the 5,053 votes counted for the respondent, was one ballot bearing the party name 'Republican,' with a single paster bearing the name 'James H. McElroy,' which paster was pasted over the name 'James H. McElroy,' printed on said ballot. 17. After the Democratic party had nominated candidates for city, town and school offices, to be voted for at said election, the respondent's political agent, with the knowledge and approval of the respondent, caused to be printed on 7,000 official ballots the name 'Democratic,' the titles of the city offices to be filled at the election and the names of the Democratic candidates therefor.   Said agent of the respondent also printed an equal number of similar town tickets and of tickets for school offices, bearing the name 'Democratic' and the names of the Democratic candidates for the several offices thereon.   Said agent, a few days before said election, mailed an envelope containing a city ticket, a town ticket and ticket for school officers, so printed by him, to every supposed Democratic voter in the city.   On all of the said city tickets so printed by him, before mailing the same, he pasted over the name of the petitioner under the word 'collector,' a paster containing the name 'James H. McElroy.' In each envelope containing a set of said tickets he inclosed a circular, which stated that a full set of Democratic tickets with his name pasted over the name of the petitioner for collector on the city ticket was inclosed, and requesting the voter to vote for him, if he desired to do so, using the tickets.   There was nothing in the circular intended or calculated to deceive voters. 18. The ballots described in paragraphs 14 and 16 of this finding were held to be void by me, in view of the provisions of the first and twelfth sections of chapter 213 of the Public Acts of 1897 (p. 911), and not for the reason that they bore distinguishing marks.   By means of such pasting it might be

possible that ballots would indicate that a certain number of persons had by an arrangement voted them. I do not find, however, that there was any intent on the part of any one to make use of distinguishing marks on the ballots for such purpose, or any purpose. The facts set forth in paragraph 17 furnish a reasonable and probable explanation of the casting of the ballots described in paragraph 14 of this finding. 19. Not included in the above 5,031 votes counted for the petitioner, were 11 ballots cast in the various districts under the following circumstances : One Joseph P. Coughlin, at and prior to the time of said election was a resident of Bridgeport and eligible to office. He then was a candidate for selectman on the Democratic town ticket. He had not been nominated for the office of collector by any party. No other person than the petitioner, with the surname of Coughlin, was a candidate of any party at said election for the office of collector. (*a*) On ten Republican city tickets, a paster bearing the name 'Joseph P. Coughlin,' was pasted over the name 'James H. McElroy.' (*b*) On one Democratic city ticket a paster bearing the name 'Joseph P. Coughlin,' was pasted over the name 'Patrick Coughlin.' 20. Included in the above 5,031 votes counted for the petitioner, were three Democratic city ballots found in the ballot box of the second district and described as follows : Over the name of a certain candidate for alderman, on each of said tickets, was a paster bearing the name of Henry F. Greenman, a candidate for alderman on the Republican ticket. The name of Henry F. Greenman was then erased by a pen and the name of another candidate was written in its place by a pen. 21. Included in the above 5,031 votes, counted for the petitioner, were seven Democratic city ballots, described as follows : The names of three of the four candidates for sheriff were erased, leaving the name of one Fenelon only, as a candidate for sheriff. All of the names of the ten candidates for alderman were erased, except the name of one Welch, who was at the head of the list. The erasure was done by a heavy pencil mark drawn from left to right through each name, and then a heavy pencil mark was drawn nearly perpendicularly through the

names of the candidates for aldermen thus erased. The lines all seemed to have been made with the same pencil and by the same hand. 22. The petitioner claimed that the votes described in paragraphs 14 and 19 should be counted for the petitioner, but I overruled said claim, and the petitioner took an exception to such ruling. 23. The respondent claimed that the votes described in paragraphs 20 and 21 should not be counted for the petitioner, but I overruled said claim, and the respondent duly excepted.

The reasons of appeal are as follows: The judge erred (1) in holding that the ballots described in paragraph 14 of the finding were void, in view of the provisions of the first and twelfth sections of chapter 213 of the Public Acts of 1897; (2) in overruling the claim of the petitioner that the votes described in paragraphs 14 and 19 of the finding should be counted for the petitioner; (3) in deciding that the respondent received a plurality of the votes cast for said office at said election, and was elected; (4) and in rendering judgment for the respondent.

*Daniel Davenport*, for the appellant (petitioner).

*Alfred B. Beers* and *George P. Carroll*, for the appellee (respondent).

HALL, J. The petitioner was a candidate upon the Democratic and the respondent upon the Republican ticket for the office of collector of the city of Bridgeport, at the town and city election held on the first Monday of April, 1899. The respondent was declared elected by the presiding officer of the meeting. Upon the petitioner's application to a judge of the Superior Court for a recount of the ballots, under § 58 of the General Statutes, it was found that the respondent had received 5,053 and the petitioner 5,031 votes, and that the respondent was therefore elected by a plurality of 22.

In reaching this result 38 ballots cast for the petitioner were held by the trial judge to be void under the provisions of the election law (Public Acts of 1897, Chap. 213, p. 911),

and were not counted. There were also 11 ballots cast for Joseph P. Coughlin which were not counted for the petitioner. The rulings of the judge of the Superior Court, that said 38 and said 11 ballots could not lawfully be counted for the petitioner, present the only questions raised by the appeal to this court.

Upon one of said 38 ballots the respondent's name, which had been pasted over the petitioner's, originally printed on the ballot, had been erased with ink or pencil, and the petitioner's name written at the right and opposite the paster. Upon the remaining 37 the petitioner's name had been pasted over his own name, originally printed on the ballots, with, in some cases, intermediate McElroy pasters; in others intermediate pasters or parts of pasters the names upon which could not be determined; and in others indications that an intermediate paster had been removed.

These 38 ballots should have been counted for the petitioner, unless they came within the prohibition of either § 9 or § 12 of the Act of 1897. Section 9 provides that "if any envelope or ballot shall contain any mark or devise so that the same may be identified in such a manner as to indicate who might have cast the same, the ballot so marked, the ballot with the paster so marked, or the ballot contained in any envelope so marked, shall not be counted." Section 12 is as follows: "All ballots cast in violation of the foregoing provisions, or which do not conform to the foregoing requirements, shall be void and not counted; *provided, however*, that any voter may alter or change his ballot by erasing any name or names therefrom, or by inserting in place of any name or names thereon, in writing, or by a paster, the name of any person, for any office to be voted for thereon, other than the person thereon named for such office." Section 1 describes the essential requisites of a legal ballot. The manner in which ballots are to be cast is provided in sections 3 to 7 inclusive, and in § 9.

The 38 ballots in question possessed all the requirements described in § 1. The manner in which they were cast was not in violation of any of the provisions preceding § 12. If

they are void ballots they have become so by changes which are prohibited, either by the *proviso* of § 12 concerning the inserting of other names by writing or paster, or by the provisions of § 9 concerning distinguishing marks.

The only alterations made were by erasing names, or by inserting names either in writing or by paster. Section 12 permits ballots to be changed by either of these methods. The erasure was of a name not originally printed upon the ballot. The name inserted by writing or paster was in each instance that of the person named on the original ballot for the office of collector. Section 12 neither expressly permits nor expressly prohibits the erasure of a name not originally printed upon a ballot, nor the insertion by writing or paster of a name which was originally printed upon the ballot. It expressly permits the erasure of those names only, which were originally printed upon the ballot, and the insertion by writing or paster of names which were not so printed upon the ballot.

A statute may be so construed as to give a negative force to affirmative words, and as impliedly prohibiting other acts than those expressly permitted. But in the absence of words directly prohibiting the changes made on those ballots, that construction of the language of the *proviso* of § 12 should be favored which, without defeating the purposes of the secret ballot law or in any way impairing its effective force, does not deprive the electors of their votes honestly cast for the candidate of their choice. This makes it best subserve its purpose—that of supporting the privileges of free suffrage. Const. Art. 6, § 6. The changes made in these ballots did not render them void because of any express or implied prohibition contained in § 12.

This conclusion is somewhat at variance with a *dictum* at the close of the majority opinion in the case of *Talcott* v. *Philbrick*, 59 Conn. 472, 480, where, in speaking of the effect of the *proviso* in § 12 of the Act of 1889, the language of which is practically identical with that of the same section in the law of 1897, it is said: "No other erasure or writing is allowed; all else must be printed. If any other writing is allowed other provisions of the statute are rendered nuga-

tory and meaningless.    Expressing in terms what may be done prohibits the doing of anything else."    But the question of the construction to be placed upon the provisions of § 12 was directly involved in the *quo warranto* cases of *Phelan* v. *Walsh* and *Sanger* v. *Henry*, 62 Conn. 260.    Among the ballots claimed to be void in those cases were certain ones originally printed without the name of any candidate for judge of probate, and upon which a name for judge of probate had been inserted by writing or by printed paster.    As the ballot as originally printed contained no name for the office of judge of probate, the name inserted by writing or paster was not that of a person other than the one named on the ballot for such office.    This court, in those cases, held that these were neither void ballots because not in conformity with the requirements of § 1, nor rendered void by the alteration of inserting the name of a candidate by writing or paster.    Concerning the absence of the name of a candidate upon the ticket, the court said ( p. 294) : " To hold that such an omission as this makes it void, would be to extend the statute somewhat beyond the letter and clearly beyond its spirit, which is hardly allowable in a statute penal in its nature." With reference to the filling in of the blank space with the name of a candidate, by writing or paster, the court said (p. 294) : " It was done under that part of the twelfth section allowing a voter to erase, interline, and use a paster. That section was designed to alleviate the otherwise rigid features of the statute and is remedial.    As such it should receive a liberal construction.    Hence if a man may erase and insert he may procure others to do it for him, or he may adopt the act of others after it has been done.    If he may erase and insert he may fill a blank.    These are all acts of the same nature as the acts which the statute expressly permits.    Hence they are within the spirit of the statute.    A construction which would limit this section to the thing expressed would be unusual and we think unwarrantable."

In the same cases the validity of 287 ballots was questioned, which were cast in the town of Litchfield for Robert E. De-Forest, the Democratic candidate for congress.    Upon all

these ballots the name of the candidate was originally printed in capital letters, excepting that a small " e " was used in the first syllable of the word DeForest. Upon 247 of these ballots, over the name thus printed, were pasters upon which was printed the name ROBERT E. DEFOREST, all in capital letters. Both of these classes of ballots were held to be valid and properly counted. The court said (p. 296) : " The ballot as first printed was a substantial compliance with the statute, and the amendment, though unnecessary, was fairly justified by the twelfth section."

We have, then, in these cases, an express decision that a ballot is not necessarily rendered void by placing over a name, originally printed thereon, the same name printed upon a paster. From the reasoning by which that decision.was reached it clearly follows, that neither the erasure of a name from a paster, nor the insertion by writing of the name originally printed upon the ticket, necessarily renders the ballot void.

Whether the 38 ballots under consideration were rendered invalid by the alterations thus made, must be determined by reference to the provisions of § 9 concerning marked ballots, rather than by those of § 12. The mere fact that alterations made upon the face of ballots might constitute distinguishing marks within the prohibition of § 9, does not render them void under that section. Even those changes which are expressly permitted by § 12, may be used to indicate the voter. Changes which are allowed by § 12 will never invalidate a ballot unless it appears that they were made for corrupt purposes. Changes which are not within the provisions of § 12 render the ballot void as having a distinguishing mark forbidden by § 9, unless a reasonable explanation " is or may be suggested for their existence consistent with honesty and good faith." Marks upon the face of ballots which appear or are shown to have been made accidentally, and not for the purpose of indicating the voter, and changes for the existence of which a reasonable explanation consistent with honesty and good faith either appears upon the face of the ballot or is shown by proof, do not render the ballots void under the provisions of § 9. *Phelan* v. *Walsh, etc., supra.*

The trial judge not only does not find that the changes in question were made for the purpose of indicating who might have cast the ballots upon which they appeared, but has found that a reasonable explanation for the action of these voters in inserting the petitioner's name by writing or paster upon a ballot upon which his name was originally printed, and in erasing a name from a paster, is furnished by the fact that the respondent caused to be sent to every supposed Democratic voter of Bridgeport a regular set of Democratic tickets, excepting that his (McElroy's) name had been pasted over that of the petitioner's for the office of collector. In so doing no deception was attempted to be practiced by the respondent, as each voter was duly informed by an inclosed circular of the change so made. But the result was, as the court has in effect found, that voters who received and used these ballots and who desired to vote for Mr. Coughlin, either attempted to remove the McElroy paster and, failing to wholly remove it, placed a Coughlin paster over the remnant, or, without attempting to remove the McElroy paster either placed a Coughlin paster over it, or—supposing from the statement of the circular that they were so doing—in fact placed the Coughlin paster immediately over Coughlin's name. The finding shows that the voters acted honestly in making these changes. The trial judge rightly held that they were not made in violation of the provisions of § 9.

The ruling that the 11 ballots upon which were pasted the name of Joseph P. Coughlin for collector could not be counted for the petitioner, was correct. Those who cast these ballots may have intended to vote for Patrick Coughlin. They in fact voted for another person who resided in Bridgeport, was eligible to the office of collector, and was a candidate for selectman upon the Democratic ticket. There is no ambiguity upon the face of these ballots, and the fact, if it be so, that they were intended to be cast for another person, cannot be shown by extrinsic evidence. McCrary on Elections, § 507.

The trial judge erred in not counting for the petitioner the 38 ballots described in paragraph 14 of the finding. The petitioner was elected to the office of collector, and a certifi-

cate to that effect should have been issued by the judge, as provided by statute.

There is error and the judgment is reversed.

In this opinion the other judges concurred.