ROBERT J. ARMSTRONG ET AL. v. THE CITY OF HARTFORD ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued January 3—decided February 5, 1952

*Joseph W. Ress,* with whom were *Everett F. Fink, John W. Joy* and, on the brief, *George J. Ritter,* for the appellants (plaintiffs).

*Samuel Gould,* corporation counsel, with whom was *Robert K. Killian,* assistant corporation counsel, for the appellees (defendants).

INGLIS, J. This action was brought by three taxpayers to determine whether a proposed issue of bonds of the city of Hartford is invalid. The question involved is whether the vote at a special election resulted in favor of the issue.

It appears from the finding, of which no requested correction may be made, that on October 9, 1950, the court of common council of the city approved "An ordiance authorizing $2,940,000 Bonds for a permanent Public Capital Improvement consisting of the Acquisition and Development of a Site for and the Construction of a Public Parking Garage." The charter of the city provides that no such bonds shall be issued "unless the ordinance authorizing such issue shall also be approved by a majority of those voting thereon at . . . a special election called and warned for the purpose." 25 Spec. Laws 56, § 4. Pursuant to that provision, the ordinance in question was submitted for approval or disapproval at a special election on November 7, 1950. The question appeared as No. 3 among four questions on paper ballots. Upon the basis of the reports of the moderators in the various voting precincts, it was reported to the board of canvassers that the vote stood 20,165 in favor of, and 19,139 against, the ordinance, with 17,442 ballots rejected and 1124 ballots mutilated.

After a partial hearing of the case in the trial court, the parties stipulated that there should be a recount of the votes cast on question No. 3, to be made by three counters to be appointed by the court. This recount was had, and the counters reported that 22,503 voters voted Yes and 22,154 voted No. A remonstrance to the report was overruled, and the court rendered judgment declaring that the bond issue in question had been approved by a majority of those voting on it.

The controversy on this appeal centers around a total of 982 ballots. These were found in three separate

packages, none of which were in the sealed ballot boxes when the boxes were opened by the counters. Three hundred and six of these ballots were tied in a bundle with a pink slip marked "306 Void due to error in marking Carroll Moderator 14 Ward 141 Precinct" and carrying the notation "Mutilated." Another bundle contained 316 ballots and came from precinct 42. This bundle had an attached pink slip marked "Rejected Ballots." The third bundle consisted of 360 ballots held together by elastic bands and labeled, on a sheet of paper, "Precinct 72 Mutilated." Each of the three bundles was introduced in evidence and marked as an exhibit. None of the ballots contained in the bundles had been either individually indorsed with the cause of rejection or returned to the ballot boxes and locked and sealed therein by the moderators in the respective precincts after the counting was completed, as is required by law where ballots actually cast are rejected. General Statutes §§ 1071, 1074. The bundles were delivered to the town clerk by the moderators in precincts 141, 42 and 72, respectively, on election night and were put aside and kept by him until he produced them in court. Except as might appear from an examination of the contents of each bundle, there is no other finding bearing on the question whether the ballots were ballots which had actually been cast at the election. The court concluded that the ballots contained in the three bundles should not be counted because they were not returned according to law.

The principal contention of the plaintiffs is that the court erred, not in refusing to count these ballots in determining the number of affirmative votes and the number of negative votes, but in refusing to count them in determining the total number of votes cast. Their point is that, if the 982 votes were added to the

total number of votes counted, the total number of votes cast would be 45,639, and of that number the 22,503 affirmative votes are not a majority. This contention was not made in the trial court. For that reason we are not required to consider it. Practice Book, 1951, § 409. In view of the fact, however, that considerations of public interest and welfare are involved, we will pass upon it. *Regional High School District No. 3* v. *Newtown,* 134 Conn. 613, 620, 59 A. 2d 527; *Columbus Industrial Bank* v. *Miller,* 125 Conn. 313, 315, 6 A. 2d 42; *Rindge* v. *Holbrook,* 111 Conn. 72, 75, 149 A. 231.

It is obvious that the 982 ballots should not be counted even to determine the total number voting on the question if, as a matter of fact, they were ballots which either had not been cast at all or were improperly cast. The trial court apparently concluded that because they had been handled with such laxity it had not been established that they had ever been deposited in the ballot boxes at all. It certainly is true that the mutilated ballots were never voted. That aside, even if the ballots in question had been placed in ballot boxes, they were not votes on question No. 3 if they were not marked on that question or if the ballots were void because of improper marks appearing anywhere thereon. General Statutes § 1064; 18 Am. Jur. 342; see *Coughlin* v. *McElroy,* 72 Conn. 99, 107, 43 A. 854. An examination of all the ballots contained in the three bundles discloses that, even if they all had been cast, no more than 48 of the 982 ballots were properly marked and could have been counted as votes on question No. 3. The rest were either mutilated ballots or were not marked on question No. 3 or were illegal ballots because of improper markings on them. If these 48 votes were added to the total vote cast, the affirmative vote would still be a majority.

The chief reliance of the plaintiffs in this connection is upon *State ex rel. Phelan* v. *Walsh,* 62 Conn. 260, 25 A. 1. In that case it was held (pp. 285-287) that, in an election in which a majority vote was required for choice, thirteen ballots which had been rejected without the reason for rejection appearing in the certificates of the presiding officers should be included to determine the total number of votes cast. The reason for that decision, however, lay in the fact that the ballots in question had been destroyed and were no longer available for examination. The burden of proof in the case was upon him who claimed that the votes should not be counted. There was no presumption that the presiding officers had rightly rejected the ballots, because the officers had not complied with the law requiring them to set forth the reasons for rejection in their returns. In the absence of the ballots themselves it could not be proved either that they had not been voted for the particular office in question or that they had been properly rejected. In the present case the defendants are not met by the same difficulty. The ballots in question are still in existence and available for examination. Upon such an examination the actual facts concerning the ballots can be and have been ascertained, as above set forth. The *Phelan* case is not controlling.

The sole remaining contention of the plaintiffs is that the neglect of the moderators to indorse upon each of the 982 ballots the reason for its rejection and to lock and seal them in the ballot boxes as directed by law requires the nullifying of the entire election. The basis of this contention is the claim that 982 electors have been disfranchised by the omissions on the part of the moderators. As we have already pointed out, it was not the failure of the election officials to indorse the rejected ballots and return them to the ballot boxes which disfranchised any of the voters. As to any votes

which were actually cast, with the possible exception of 48, the voters disfranchised themselves by failing to vote upon question No. 3 or by illegally marking their ballots. The counting of the 48 ballots which appear to have been properly marked would not have changed the result. It is true that under certain circumstances a court may invalidate an entire election. See *Pollard* v. *Norwalk*, 108 Conn. 145, 147, 142 A. 807. Such a result, however, will not follow from irregularities in the conduct of an election on the part of election officials unless it appears that the outcome of the election would have been different if they had not occurred. *Baldauf* v. *Gunson*, 90 Colo. 243, 249, 8 P. 2d 265; *Lafayette, M. & B. R. Co.* v. *Geiger*, 34 Ind. 185, 231; *Poor* v. *Duncombe*, 231 Iowa 907, 914, 2 N. W. 2d 294; *State ex rel. Dusey* v. *Creston Mutual Telephone Co.*, 195 Iowa 1368, 1371, 191 N. W. 988; 18 Am. Jur. 330, § 224, 350, § 259; 29 C. J. S. 331, § 229; see *State ex rel. Andrew* v. *Lewis*, 51 Conn. 113, 124. There would be no justification in the present case for invalidating the election.

There is no error.

In this opinion the other judges concurred.