THE STATE vs. NORBERT BOSSA ET AL.

69  335
75   16
75  588

Third Judicial District, Bridgeport, April Term, 1897.   ANDREWS, C. J.
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The provisions of the general election law with reference to the counting and rejection of double and marked ballots (Public Acts of 1895, Chap. 267, § 9), do not apply to ballots cast on the question of license. The provision in Chap. 308 of the Public Acts of 1895, p. 648, that "the license votes," cast as prescribed by said Act, should be "counted and returned as now provided by law," does not refer to the general election law, but to the mode theretofore provided and followed for counting and returning license ballots.

Unless a ballot comes clearly within the prohibition of some statute it should be counted, if from it the wish or will of the voter can be ascertained.

[Argued April 27th—decided July 13th, 1897.]

APPLICATION for an alternative writ of mandamus requiring the respondents to correct their return, declaration and certificate of the result of a town vote on the license question,

brought to the Superior Court in Fairfield County and tried to the court, *Ralph Wheeler, J.*, upon motion of the respondents to quash the alternative writ; the court granted the motion and denied the application, and the petitioner appealed for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Julius B. Curtis* and *Lewis J. Curtis*, for the appellant (petitioner).

*John H. Light*, for the appellees (respondents).

TORRANCE, J. This is an appeal from a judgment denying an application for a peremptory writ of mandamus. The substance of the application and of the alternative writ, may be stated as follows:—

At the annual town meeting of the town of New Canaan, held on the first Monday of October, 1896, pursuant to legal notice to that effect, a vote by ballot was taken to determine whether any person should be licensed to sell spirituous and intoxicating liquors in said town. The respondent Bossa was the moderator of said meeting, and the respondents Noble, Kirk, Hoyt and Weed were the counters of said ballots. Of the legal ballots cast at said meeting, there were 264 against, and 265 in favor of, the issue of such licenses. "The said counters did unlawfully count and make return of two illegal ballots in favor of 'No License,' one of which said two ballots was a double ballot, and the other of said ballots was a ballot which by the person voting the same was placed in a small sealed envelope, and with said small sealed envelope was placed in the official envelope, and so deposited in the ballot box, and was by reason of said fact so marked as that the person who cast the same could easily and readily be identified. The said two illegal ballots were by said counters added to and counted with the 264 legal 'No License' ballots aforesaid, and the result of said balloting was by said moderator declared to be 266 ballots in favor of 'No License'

and 265 ballots in favor of 'License;' when in fact the lawful result of said balloting was 264 ballots in favor of 'No License,' and 265 ballots in favor of 'License.' The said moderator accepted said illegal return from said counters, and declared the result of said balloting to be 266 ballots in favor of 'No License' and 265 ballots in favor of 'License,' and so certified the result to the town clerk of said New Canaan." The respondent Jones is town clerk of said town, "and as such town clerk has received and recorded said illegal declaration of said moderator and has transmitted the same to the county commissioners of Fairfield County and to the Secretary of State, and said town clerk has the custody of said ballots. Said counters have refused to change their said return by making the same in conformity with the legal voting as aforesaid, and said moderator refuses to correct his declaration of the result of said balloting, or to correct his certificate filed with the town clerk, making the same in conformity with said vote."

The alternative writ required the counters to return to Bossa, the moderator, "the lawful result of said balloting, namely, 265 ballots in favor of 'License,' and 264 ballots in favor of 'No License'"; it required the moderator "to certify said result to said town clerk"; and it required the town clerk to "receive such certificate from said Bossa, and transmit the same to the Secretary of State and the county commissioners of Fairfield County," or that the respondents should signify cause to the contrary to the court, on or before December 11th, 1896.

The respondents filed a motion to quash the alternative writ, the substance of which motion may be stated as follows: The facts alleged in the alternative writ and in the application therefor, show (1) that the respondents are not by law authorized or required to do what they are in the alternative writ required to do; (2) that the counters counted the ballots and certified the same to the moderator, who in turn received said certificate and certified the same to the town clerk, as required by law; (3) that the two ballots counted in favor of "No License" "were not illegal ballots under the

law regulating balloting for 'License' or 'No License,' and
that they were properly counted and returned"; (4) that
the respondents have no power to do that which the alterna-
tive writ commands them to do. The court granted the
motion to quash, and denied the application for a peremptory
mandamus.

One of the decisive questions in this case is whether the
two so-called illegal ballots were rightfully counted in favor
of "No License." If they were, the decision of the court
below must stand, and all other questions in the case become
of no importance upon this appeal. Section 9 of Chap. 267
of the Public Acts of 1895, p. 619, concerning elections, pro-
vides that "if more than one ballot containing the title of
the same office, or for the same educational purpose, shall be
found in any envelope, neither of such ballots shall be counted
for any person, or for such purpose, and all such ballots shall
be returned as rejected for being double ballots"; and further,
that "if any envelope or ballot shall contain any mark or
device so that the same may be identified in such a manner
as to indicate who might have cast the same, the ballot so
marked, or the ballot contained in any envelope so marked,
shall not be counted, but shall be kept by the moderator and
returned to the town clerk in a separate package from the
ballots which are counted at such election." Counsel for the
appellant claim that these provisions are, by Chap. 308 of
the Public Acts of 1895, p. 648, made applicable to the bal-
lots cast for or against license, chiefly because that Act pro-
vides (§ 4) that "the license votes thus cast shall be counted
and returned as now provided by law."

We are of opinion that this claim is not well founded.
From 1874 until the passage of the Act of 1895 contained in
Chap. 308 aforesaid, the law only required that the vote upon
the question of license or no license should be taken by bal-
lot, without providing otherwise, specifically and expressly,
how such vote should be taken. General Statutes, § 3050.
Under this law it was held, in the case of *Donovan* v. *County
Commissioners*, 60 Conn. 339, that the provisions of the Act
of 1889 concerning elections (Chap. 247, Public Acts of

1889), did not apply to votes taken under § 3050 of the General Statutes. Chapter 308 of the Public Acts of 1895 now provides somewhat specifically how the license vote by ballot shall be taken, and it makes by reference some parts of the law relating to elections, a part of itself. It requires the selectmen to provide a suitable box marked "License," for the reception of the license votes. It provides for the appointment of box-tenders and checkers, and makes their duties "the same as are imposed upon the box-tenders and checkers for the ballot-box for town officers." It provides for a sufficient supply of official envelopes and ballots of the kind described in the Act, and declares that "the duties of the tenders of the envelope booth shall be the same in regard to license envelopes as the law now imposes, or may impose, upon them in regard to official envelopes for town officers"; and further, that "the duties of all other town or election officers shall be the same in regard to the 'license' envelopes that they are in regard to the other official envelopes." It further provides in the last section, as follows: "The ballots provided for in this Act shall be the only legal ballots to be used in voting on the question of license, and shall be enclosed and sealed in the official license envelope provided for in this Act, by the voter, while within the voting booth, and deposited in the ballot-box provided for the license vote, under the same provisions of law that apply to envelopes for the town officers. The license votes thus cast shall be counted and returned as now provided by law."

The foregoing is the substance of the material parts of the entire Act, and among them we find nothing that, either expressly or by necessary implication, makes the provisions of the election law relating to the invalidity and rejection of double ballots or marked ballots, a part of this Act, or makes such provisions at all applicable to license ballots. As before intimated, the clause mainly relied upon by counsel for the appellant in support of their contention, is the one which provides that the license votes shall be counted and returned "as now provided by law." Their claim, in substance, is that this should be so construed as to make all the provisions

of the election law relating to the counting of ballots and to the rejection of double ballots and marked ballots, applicable to the license ballots. Prior to the passage of the Act in question, the law did not provide expressly and specifically how the license balloting should be conducted, nor how the license ballots should be counted, nor when nor where the result of the ballot should be declared. It did, however, provide that the question of license or no license, should be determined by ballot, and that the ballot should be taken only at an annual town meeting after due notice that it would be so taken. This clearly implied that a full and fair opportunity to cast such a ballot would be given at such a meeting, that the ballots cast would be fairly counted, and that the result of the ballot would be ascertained and declared before the meeting adjourned. In this condition of the law the statutory provisions of the general election law did not apply to license ballots. *Donovan* v. *County Commissioners*, *supra*. They were not made void if double or marked, nor were the officers in charge of the license ballot expressly required to reject them for being double, or marked within the meaning of the general election law.

Such, in a general way, was the law governing license ballots when the Act now in question (Chap. 308 of the Public Acts of 1895), was passed. That Act did not specifically provide how the license votes should be counted, it simply provided that they should be counted, and counted " as now provided by law." The appellant claims that the clause, " as now provided by law", here means " as now provided by the general election law "; but, looking at the entire Act in the light of the previous legislation on this subject, we think it means that the license votes shall be counted in the same way as the law " now " requires such votes to be counted. In other words the Act expressly requires, as the former law did not, that a count shall be made, but it does not change the mode of making it. The license ballots are to be counted as they have theretofore been counted.

This seems to be the plain, apparent meaning of this Act upon the point in question, and the construction contended

for by the appellant seems to be a forced and unnatural one. It would have been very easy for the legislature to have said in this Act, had it so intended, that the provisions of the general election law with reference to the counting and rejection of ballots, should apply to license ballots, but it apparently carefully refrained from saying so. It embodies by reference certain parts of the general election laws, but it does not embody those relating to the counting and rejection of ballots. Where the legislature in express terms says that a ballot shall be void for some cause, the courts must undoubtedly hold it to be void; but no voter is to be disfranchised on a doubtful construction, and statutes tending to limit the exercise of the ballot should be liberally construed in his favor. Unless a ballot comes clearly within the prohibition of some statute it should be counted, if from it the wish or will of the voter can be ascertained. Under the facts in this case we are of opinion that the two ballots complained of were rightfully counted.

As this is decisive of this appeal it becomes unnecessary to consider the other questions raised upon the record, and upon them we express no opinion.

There is no error.

In this opinion the other judges concurred.