## JOHN H. FLANAGAN vs. JAMES A. HYNES.

Third Judicial District, New Haven, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The ultimate purpose of statutes regulating the exercise of the right
of suffrage is to secure an orderly and faithful expression and
registration of the popular will upon the questions submitted for
decision. If ballots are to be rejected and voters thereby dis-
franchised, it should be because the legislature has seen fit to re-
quire it in the interest of an honest suffrage, and has expressed
that requirement in unmistakable language. It should not result
from doubtful judicial construction, from a too strict regard for the
mere letter of the statute, or from a resort to nice or technical
refinements in the interpretation or application of the law.

Ballots valid on their face and cast in good faith for one of two candi-
dates of the same political party, each of whom with some reason
and color of right claimed to be its official nominee, are not to be
rejected merely because the moderator, or even a court after full
investigation, is of the opinion that the other nominee was technic-
ally the regular party candidate, and therefore had the sole right
to use the party designation at the head of the ticket. Such fac-
tional disputes within the party organization must sooner or later
be decided, for the most part, by the verdict of the voter, as the
machinery of the law is not adapted to their timely settlement.

Submitted on briefs January 29th—decided April 17th, 1903.

PETITION for a recount of ballots and a judicial declara-
tion of the plaintiff's election as registrar of voters of the
town of Waterbury, brought to and heard by the *Hon.
Milton A. Shumway*, a judge of the Superior Court, who
rendered judgment for the plaintiff, from which the defend-
ant appealed. *No error.*

The case is sufficiently stated in the opinion.

*John O'Neill*, for the appellant (defendant).

*Charles G. Root, Terrence F. Carmody* and *John H. Cassidy*,
for the appellee (plaintiff).

PRENTICE, J. At the annual town election held in the

town of Waterbury on the first Monday of October, 1902, the petitioner and respondent were candidates for the office of registrar of voters. The one of them who received the larger number of votes was entitled to be declared elected; the other was not. For the petitioner 1,226 ballots were cast, of which 19 were upon pasters; 1,134 were cast for the respondent, 4 being by pasters. The respondent was declared elected. The 23 paster ballots, which were concededly valid, may, under the facts of the case, be disregarded. All the other ballots, whether cast for the petitioner or the respondent, were identical in all respects, save that the name of the petitioner appeared upon some, and that of the respondent upon others, as the candidate for registrar of voters. All of these ballots confessedly complied with the requirements of statute and were altogether free from objection, save in one particular which remains to be noticed. Both sets of ballots were headed with the word "Democratic." The claim was made at the count and is now made, that this use of the word "Democratic" upon the ballots containing the petitioner's name invalidated them. The moderators in four of the six voting districts sustained this claim and rejected all of said ballots cast therein for the petitioner as void, thus accomplishing his defeat. The judge before whom the petition was heard has declared them valid and adjudged the petitioner elected. The single question thus presented for our decision is as to whether or not the presence of the word "Democratic" upon the petitioner's ballots rendered them void.

The objection to the rejected ballots rests upon the claim that the petitioner was not the rightful candidate of the Democratic party. The petitioner was placed in nomination at the regular convention held on October 3d, 1902, for the nomination of Democratic candidates for the coming town election. This convention was duly called and constituted. It was the only convention held for the purpose, and nominated all the other Democratic candidates. The rules for the government of the party, which had been adopted by the town convention held in the fall of 1901, and before the Act of 1901 regulating caucuses and primaries (Public Acts of

1901, Chap. 176, Rev. 1902, §§ 1720–1727) went into operation, prescribed the officers who should be nominated at town conventions. The registrar of voters was not included. The rules also provided for city conventions, wherein should be nominated candidates for city offices. The power to legislate for the party was expressly reserved to the city conventions. The nomination of registrar of voters was, under the rules, to be made at neither of these conventions of delegates selected at primaries, but at a special convention to be held in May, constituted of the members of the Democratic city committee, and the Democratic holders of certain designated offices. This latter body met in May, 1901, as provided by the rules, and nominated the respondent. The town convention assembled on October 3d, 1901, as aforesaid, which was the first held since the consolidation of the city and town governments, and also the first held since said Caucus Act of 1901 went into operation, after nominating candidates for all the offices to be voted for except that of registrar of voters, rescinded the rule adopted by the town convention of the year previous, providing for the nomination of the registrar of voters at a special convention in May, and thereupon placed the petitioner in nomination for that office. The chairman of the Democratic town committee refused to recognize the petitioner's nomination, and recognized the respondent as the rightful candidate of the party. The ballots issued by him contained the latter's name. The petitioner, in this situation, caused the ballots to be printed and circulated which are under review.

There is no question made of the petitioner's good faith in his issuance of the ballots bearing his name and the Democratic designation; nor is any claim made that they were used or cast with any unlawful purpose, or with any intent to deceive or defraud, or in any way evade either the express provisions or the underlying purposes of the ballot law. The sole objection to the ballots is that they did not in fact comply with legal requirements, and therefore should have been rejected.

A glance at the recital of the facts is sufficient to make it

clear that the situation out of which the trouble arose was a factional dispute within the Democratic party organization over its nomination for an office. The petitioner and respondent each claimed, and now claim, that he was the rightful nominee. These claims have been argued before us, and on behalf of the respondent we are asked not only to decide this issue in his favor, but, having done so, to declare that the ballots for the petitioner were therefore necessarily void.

This position of the respondent assumes too much. It involves a distinct misapprehension of the proper attitude of courts in interpreting and applying the provisions of ballot laws. Such laws have for their ultimate purpose the registration of the popular will upon the questions submitted for decision. Until quite recently their provisions were comparatively few and simple, and for the most part were concerned with the machinery and methods for the convenient and orderly expression of the will of the voters as they should choose to express it, and safeguarding the result as expressed. Of late, legislation has sought not only to register and safeguard the will of the voters as expressed, but, as far as possible, to secure an expression which should represent the true will of the voters unaffected by corruption, intimidation, undue influence, or deception. Such an attempt necessarily involves many commandments whose " thou shalts " and " thou shalt nots " multiply into a more or less complicated system. These commandments to be effective involve penalties which oftentimes can only be enforced by a rejection of ballots. The rejection of ballots ordinarily signifies the disfranchisement of the voters whose ballots they are. Circumstances may justify this disfranchisement as a necessary incident of an attempt to obtain an honest and true expression of the popular will. The danger of such a system, however, is that the disfranchisement will extend to the honest voter honestly attempting to exert his influence upon the election result. When such a result is accomplished, a grievous wrong is done to the citizen whose right is taken away; when it is done to any great extent, the system is put in serious jeopardy of being so used as to defeat its real ends.

Statutes are to be interpreted and applied with a regard for the purposes which they are intended to accomplish and the evils they are intended to avert. There is no kind of legislation under a popular government to which this principle should be more consistently applied than that which seeks to regulate the exercise of the right of suffrage. If there is to be disfranchisement, it should be because the legislature has seen fit to require it in the interest of an honest suffrage, and has expressed that requirement in unmistakable language. It should not result from doubtful judicial construction, from a too strict regard for the mere letter of the statutes, or from a resort to nice or technical refinements in either interpretation or application. *State.* v. *Bossa*, 69 Conn. 335.

If we look at the situation disclosed by the record, it is apparent that the ballots cast for the petitioner were issued and cast in good faith and with no intent to violate either the letter or the spirit of the law. The refusal of the party chairman to recognize him as the party candidate, compelled him to either tamely submit or do precisely as he did. The law made no provision for the timely settlement of the dispute. He made use of the party designation under a claim of right and with a color of right. He was not a self-named nominee; he was not the nominee of a self-appointed committee, or of a faction or gathering which could have no claim to any party designation; he was not the nominee or pretended nominee of some party organization which had no right to the Democratic name. He was placed in nomination by the regular Democratic convention, composed of delegates regularly chosen at the regular Democratic primaries of the enrolled Democratic voters of the town. His right, whatever it was, came from unquestioned Democratic sources. His claim was founded upon the action of the organization of the Democratic party. To say that under such circumstances he had no alternative but to yield to the decision of the party chairman, and that his assertion, without the chairman's consent and in the only way open to him, of his claim to the benefit of a nomination which he contended that he had rightfully received, was in violation of law and rendered

invalid every straight ballot cast for him, is to contend for a principle of construction which might easily lead to results which would be subversive of the very purpose of the election system.

It may be that the petitioner's claim to the nomination was not technically sound. It may be that the respondent had a better right to have his name appear upon the party ticket. We have no need to decide that question. · All that it is necessary to say is, that under the circumstances the petitioner was fully justified in carrying his contention to the polls in the manner he did. This was a factional dispute within the party organization. Such are bound to arise. They may relate to the regularity of party organization, or party action, or, as in this case, a party nomination. There is no machinery provided by our law, whether judicial or otherwise, to make a settlement, or at least a timely settlement, of many of them. The verdict of the voter must for the most part sooner or later decide the controversy. Meanwhile, there is no law which directs that one who fairly and in good faith asserts, at the polls, by the use of the party name, his claim to party regularity or a party nomination, if that claim is made honestly and upon a reasonable foundation of fact, does so at the peril of disfranchisement for himself and his supporters, if a moderator, or, in the final event a court, fails to confirm his contention.

There is no error.

In this opinion the other judges concurred.