ALBERT T. SCULLY ET AL. *v.* TOWN OF WESTPORT ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued October 8—decided October 28, 1958

*Alan H. Senie,* with whom was *Warren D. Kealey,* for the appellants (plaintiffs).

*Edgar T. See,* for the appellees (defendants).

KING, J. The plaintiffs Scully and Blanchard brought this action, claiming that they were elected first selectman and selectman, respectively, of the town of Westport at the election held on November 5, 1957. The defendants Baldwin and Roberts were respectively declared elected to those offices, duly qualified and are engaged in the performance of the duties thereof. The relief herein sought included a certificate declaring the plaintiffs to have been elected and an injunction. Certain other somewhat inconsistent claims for equitable relief, including the ordering of a new election, were made.

While the complaint was complex and, with amendments, contained five counts, the plaintiffs' basic claim on the trial, and their only claim here, was that the absentee ballots cast were illegal in form and should all be eliminated from the count and that if this were done the plaintiffs would have been elected. Technically, ballots as such are not used by absentee voters. Rather, votes in accordance with the instructions of the absentee voter are cast by a designated election official. See *Mansfield* v. *Scully,* 129 Conn. 494, 500, 29 A.2d 444. For purposes of simpli-

fication, however, we adopt the nomenclature used by the parties and the court below and refer to the absentee voters' instructions as absentee ballots. The court found two of the absentee ballots invalid for defects peculiar to them, held the others valid, and rendered judgment for the defendants. Admittedly, the plaintiffs were not elected unless more than these two absentee ballots can be eliminated from the count.

All parties to this appeal unite in construing the applicable provisions of the Westport charter[1] as providing that unless he uses the write-in procedure, a voter who wishes to vote for a candidate for first selectman who has been nominated by a political party must also vote for a candidate for selectman who has been nominated by the same political party. Of course, by proper instructions an absentee voter may avail himself of the write-in procedure. For the purposes of this appeal we accept this construction of the charter. See *Scully* v. *Westport*, 20 Conn. Sup. 399, 137 A.2d 352. The candidates of each political party for first selectman and selectman were listed together on the ballot labels on the voting machines, and the machines themselves were so adjusted that no elector could cast other than one combined vote for first selectman and selectman unless

---

[1] "Section 1. ELECTION. . . . [The candidates for first selectman and selectman of any one political party] shall be listed together upon the ballot or machine. No elector shall cast more than one combined vote for first selectman and one other selectman. The candidate for first selectman having the highest number of votes shall be elected first selectman and the candidate for selectman combined with him on the ballot or machine shall be elected a selectman. The defeated candidate for first selectman having the highest number of votes shall be elected a selectman. If a person is elected first selectman who has not been nominated by a political party, the two defeated candidates for first selectman having the highest number of votes shall be elected selectmen." Spec. Acts 1957, No. 348, c. 3 (28 Spec. Laws 435).

he used the write-in mechanism of the machine. Of this the plaintiffs make no complaint.

Their sole complaint is that on neither the absentee ballots nor the instructions for filling them out nor the list of candidates furnished by the town clerk was it indicated that the charter provision required a combined vote for first selectman and selectman of any one political party. The absentee ballots were furnished by the secretary of state and complied with the provisions of § 623d of the 1955 Cumulative Supplement, in effect at the time of the election. No provision of the Westport charter called for any different form of absentee ballot. No question was raised by the plaintiffs or anyone else as to the form of the absentee ballots until after the election, although these ballots, with the accompanying instructions, had been available in the town clerk's office for a considerable time before the election. There was no evidence of fraud or wilful misconduct on the part of anyone with respect to the absentee ballots. In fact, but one absentee voter attempted to vote contrary to the charter provision, and this ballot was rejected by the moderator. As far as it appears, with this one exception each voter by absentee ballot fully understood the effect of the charter provision and was in nowise misled by the form of the ballot. In other words, the plaintiffs failed to prove that had the form of the absentee ballots conformed in all respects to their claims, any absentee ballot other than the one referred to would have been voted in any different manner. As a necessary corollary, they failed to prove that the outcome of the election would have been in any material respect changed.

"Where the legislature in express terms says that a ballot shall be void for some cause, the courts must undoubtedly hold it to be void; but no voter is to be

disfranchised on a doubtful construction, and statutes tending to limit the exercise of the ballot should be liberally construed in his favor. Unless a ballot comes clearly within the prohibition of some statute it should be counted, if from it the wish or will of the voter can be ascertained." *State* v. *Bossa,* 69 Conn. 335, 341, 37 A. 977; *Flanagan* v. *Hynes,* 75 Conn. 584, 588, 54 A. 737; *Moran* v. *Bens,* 144 Conn. 27, 32, 127 A.2d 42. The court was not in error in refusing to hold the absentee ballots invalid for defect of form.

Were it not for the public interest involved in the speedy settlement of contests for election to office, we would have no occasion to discuss this matter further. But considerations of the general welfare and the public interest impel us to take cognizance of the improper procedure followed in this case. It is settled law that except as otherwise provided by statute, quo warranto is the exclusive method of trying the title to an office, which was the fundamental purpose of the plaintiffs' action. *Hinckley* v. *Breen,* 55 Conn. 119, 121, 9 A. 31; 44 Am. Jur. 94, § 8. According to the plaintiffs' claims, the defendants had usurped the offices in question and were actually carrying out the duties thereof. Under this state of facts, quo warranto would clearly be an appropriate common-law action. *Meigs* v. *Theis,* 102 Conn. 579, 591, 129 A. 551. By no possibility could this action be construed as one in the nature of quo warranto. Practice Book, Form No. 445.

The obvious procedure for the plaintiffs to have followed was the simple, efficient and expeditious statutory recount procedure authorized by § 806d of the 1955 Cumulative Supplement (now Public Acts 1957, No. 526, § 7). The forerunner of this recount statute was enacted for the express purpose of

doing away with the technical, cumbersome, time consuming and uncertain remedy provided by the common-law action of quo warranto as modified by statute (now General Statutes §§ 8227-8230). Public Acts 1877, c. 146, § 36, as amended, Public Acts 1878, c. 102, quoted in *State ex rel. Andrew* v. *Lewis,* 51 Conn. 113, 123. The recount statute effectually accomplishes that objective. *Meigs* v. *Theis,* supra, 595. Admittedly, the plaintiffs made no attempt to follow this procedure.

The only other action which might be claimed to be authorized by statute as even possibly appropriate to the situation here would be an action for a declaratory judgment. It is extremely difficult to determine what form of action the plaintiffs had in mind in their complex, multicount complaint. In many respects it seems basically to be an action in equity. If so, no such cause of action would lie. *Hinckley* v. *Breen,* 55 Conn. 119, 121, 9 A. 31. If we assume, without deciding, that the present complaint could be construed as an attempt to utilize the statutory procedure for a declaratory judgment with ancillary equitable relief, no justification is apparent for the court's hearing the case on the merits. Practice Book § 277 (c); *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 133 Conn. 403, 410, 51 A.2d 907; *Holt* v. *Wissinger,* 145 Conn. 106, 113, 139 A.2d 353. Public interest obviously required that this controversy be settled expeditiously, and this could best be accomplished by invoking the procedure under the recount statute. Indeed, in its memorandum of decision, the court said: "The better procedure would have been by petition to a judge in accordance with § 806d of the 1955 Cumulative Supplement." In the light of this statement, which was obviously correct, it would appear that the court abused its

discretion in permitting the plaintiffs to pursue this action through the court to judgment on the merits. *South Norwalk Trust Co.* v. *Knapp,* 128 Conn. 426, 432, 23 A.2d 519. It is hardly necessary to point out that the declaratory judgment procedure is appropriate in election contests not involving election to public office. In such cases, the statutory recount procedure is inapplicable, and consequently the question, under Practice Book § 277 (c), of another, superior remedy is unlikely to arise. Examples of such cases are *Pollard* v. *Norwalk,* 108 Conn. 145, 142 A. 807, and *Armstrong* v. *Hartford,* 138 Conn. 545, 86 A.2d 489.

To send the case back for dismissal on this procedural ground, which neither of the parties raised, would, however, prolong this litigation even more unduly than has the plaintiffs' improper choice of remedy. Actually, the court rendered no declaratory judgment but merely judgment for the defendants. Even if the court, in reaching its decision, erroneously considered the case on its merits, no harm was done the plaintiffs. The harm done was to the defendants and the public in prolonging the time in which the outcome of the election was left in doubt because of the pendency of this proceeding. The effect of the court's action, at most, was to determine that even on the merits the plaintiffs failed to prove themselves entitled to any relief.

There is no error.

In this opinion the other judges concurred.