JOHN H. MILLER ET AL. *v.* GLORIA SCHAFFER, SECRETARY OF THE STATE OF CONNECTICUT, ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MacDONALD, Js.

Argued October 13—decided October 17, 1972[1]

(In the above-entitled case, the Supreme
Court on October 17, 1972, issued the
following ruling from the Bench)

On August 23, 1972, the Superior Court rendered judgment in the present case making certain corrections of clerical errors in the redistricting plan submitted by the reapportionment board, ordered that the plan as corrected be implemented and that the election of members of the General Assembly prescribed by article third, § 8, of the constitution of Connecticut be held pursuant to that plan in accordance with a detailed schedule. From that judgment the defendants appealed to this court.

On September 5, 1972, this court determined that it was in the public interest that these appeals from the judgment of the Superior Court be heard as soon as possible and motions for an expedited appeal were granted. The appeals were heard on October 13, 1972, the earliest possible date on which counsel were ready to proceed. In view of the present uncertainty concerning the exercise of the constitutional right of the electors of the state to elect members of the General Assembly at a general election to be held on the Tuesday after the first Monday of November in this year, it is in the public interest that the decision reached by this court be announced immediately.

It is clear that the Superior Court did not attempt to determine the federal constitutional issues now pending before the Supreme Court of the United States. Its judgment (1) corrected the clerical errors

[1] For record and briefs see Vol. A-566.

in the plan; (2) determined that a failure to elect the state legislative body would cause irreparable harm to the people of the state of Connecticut and violate their rights under the Connecticut constitution; (3) declared that the state board plan is valid and effective on an interim basis for the election mandated by the constitution for this fall; and (4) adopted a calendar setting up a schedule of dates to set in motion the state election process.

It is the opinion of this court that the conclusions of the trial court were legally correct and cannot be disturbed. A written opinion will be filed in due course.

This court will retain jurisdiction of this case.

*Robert Satter* and *James A. Wade,* for the appellants (defendant Jeanne Averna et al.); *Kenneth J. Laska,* for the appellant (defendant city of Bristol et al.).

*Francis J. McCarthy,* with whom were *Harry W. Hultgren, Jr., Richard A. Stewart,* and, on the brief, *Robert G. Dixon, Jr.,* of the Washington, D.C., bar, for the appellees (plaintiffs).

RYAN, J. This is an appeal from the judgment in an action brought by the plaintiffs seeking a declaratory judgment and an order "in the nature" of mandamus. The plaintiffs sue as resident citizens and electors of the state of Connecticut and as representatives of all citizens and electors similarly situated. The named defendant, the secretary of the state of Connecticut, is sued in her official capacity with respect to the conduct of elections to the General Assembly and the certification thereof, and as the representative of all state and municipal officials charged with duties in the conduct of such elections. The defendants Nathan G. Agostinelli and Robert I. Berdon, comptroller and treasurer, respectively, of the state of Connecticut, are engaged with the named defendant in canvassing the votes in elections to the General Assembly. The defendants the town clerk, registrars of voters, selectmen and councilmen of the town of Wethersfield, in Hartford County, are sued in their several capacities because the subject matter of the complaint in this action concerns their functions in the composition of electoral districts for the conduct of primaries and elections for members of the General Assembly, and are sued additionally as representatives of all municipal election officials charged with duties in the composition of electoral districts for and the conduct of such elections, including all town clerks, registrars of voters, selectmen of municipalities of the state, and legislative bodies as defined by § 1-1 of the General Statutes.

Article third, § 6, of the Connecticut constitution provides for a decennial reapportionment of the General Assembly. Section 6, subsection (a), of article third requires that the "general assembly shall decennially at its next regular session following the

completion of the census of the United States, upon roll call, by a yea vote of at least two-thirds of the membership of each house, enact such plan of districting as is necessary in accordance with the provisions of this article." When the 1971 session of the General Assembly failed to enact such a plan of districting by April 1, 1971, the governor was required under the provisions of article third, § 6, subsection (b), to appoint "a commission consisting of the eight members designated by the president pro tempore of the senate, the speaker of the house of representatives, the minority leader of the senate, and the minority leader of the house of representatives, each of whom shall designate two members of the commission." This was done and, in accordance with article third, § 6, subsection (c), the commission proceeded to consider the alteration of the districts of the General Assembly. On the failure of the commission to submit a plan of districting by July 1, 1971, the speaker of the house of representatives and the minority leader of the house of representatives pursuant to the provisions of article third, § 6, subsection (d), each designated a judge of the Superior Court as a member of the board, who then designated an elector of the state as the third member. The third member was a justice of the Connecticut Supreme Court. On September 30, 1971, the board filed with the secretary of the state a plan of apportionment of the General Assembly adopted by a majority of the board which was published by her on December 21, 1971. Conn. Const., art. 3 § 6 (e). It is this plan which is the subject of the present action.

This action was brought November 12, 1971, seeking a declaratory judgment and an order: construing and reforming the plan in accordance with the

intent of the board; declaring the plan as so construed to be valid and effective for elections for members of the General Assembly to be held November 7, 1972; and, by way of ancillary relief, requiring the defendant the secretary of the state and all state and municipal officials charged with duties in the conduct of primary and general elections for members of the General Assembly to conduct such primaries and elections in accordance with that plan as construed and reformed.

After this action was commenced in the Superior Court, another action was filed in the United States District Court for the District of Connecticut dated November 18, 1971, seeking a declaratory judgment of the invalidity of the plan on federal and state constitutional grounds. On December 10, 1971, an application for intervention as a defendant was filed by J. Brian Gaffney, which was granted by the District Court on December 27, 1971. Gaffney filed a defense, urging that the United States District Court abstain from proceeding because of the pending state court action. On March 30, 1972, a three-judge federal court filed an opinion refusing abstention and declaring the plan invalid for violation of the federal constitutional principle of "one-man, one vote." By its judgment filed April 6, 1972, the United States District Court enjoined state election officials from holding elections for the General Assembly until approval by that court of another plan of reapportionment. A special master was appointed for the purpose and filed an additional plan with the court on May 26, 1972. *Cummings* v. *Meskill*, 341 F. Sup. 139 (D. Conn.).

On April 13, 1972, the defendant intervenor in the federal case appealed from that judgment to the United States Supreme Court; *Gaffney* v.

*Cummings,* Supreme Court docket No. 71-1476; and subsequent thereto filed with the Supreme Court a combined jurisdictional statement and brief together with a motion for expedited consideration of that appeal. On May 22, 1972, the United States Supreme Court denied the motion for expedited consideration with three justices inviting the appellant to file an appropriate motion for a stay of execution. Gaffney thereupon moved the United States District Court to stay further proceedings, and on May 24, 1972, moved that court for a stay of judgment, which motion was denied on May 26, 1972. Thereafter, Gaffney addressed his motion to the justice of the Supreme Court for the Second Circuit who referred the matter to the full court. On June 12, 1972, the Supreme Court granted the appellant's motion for a stay. *Gaffney* v. *Cummings,* 407 U.S. 902, 92 S. Ct. 2441, 32 L. Ed. 2d 679.

On June 15, 1972, Gaffney moved the District Court to perfect the stay order of the United States Supreme Court and in that motion he requested that the board plan be put into effect for the election to be held November 7, 1972. This motion was denied on June 19, 1972. The same motion was then addressed to Justice Marshall, Supreme Court Justice for the Second Circuit, who denied it without comment on July 7, 1972. The motion to perfect the stay order was then addressed to the Chief Justice of the United States Supreme Court who denied it on July 19, 1972. Federal proceedings to implement the stay order of the United States Supreme Court by ordering the board plan into interim effect for the November, 1972, legislative elections, pending disposition of the appeal in that court, concluded July 19, 1972, and the plaintiffs instituted man-

damus proceedings in the Superior Court in aid of this pending action July 27, 1972.

At the commencement of the trial of this case, the defendants Jeanne Averna et al. announced to the court that they were reserving their rights to have their constitutional claims litigated in the federal District Court, and that they were submitting their federal issues to the trial court so that in deciding the issues before it, it could do so in light of the potential federal claims that also exist.

The court found the following facts: The population of the state of Connecticut according to the 1970 census is 3,032,217. The plan provides for a house of representatives consisting of 151 members, each elected from a single assembly district. With a population of 3,032,217 and 151 assembly districts, the perfect number of people in each assembly district should be 20,081. The plan provides for a senate consisting of thirty-six senators, each elected from a single senatorial district. With a population of 3,032,217 and thirty-six senatorial districts, the perfect number of people in each senatorial district would be 84,228. The boundary lines of forty-seven towns are cut under the plan so that one or more portions of each of these forty-seven towns is added to another town or a portion of another town to form an assembly district. Twenty-nine of the aforesaid forty-seven towns have their boundary lines cut more than once, resulting in more than one portion of the town being added to another town or a portion of another town to form an assembly district. If a segment of a town is defined as a portion of a town being used to form an assembly district not wholly within that town, the plan creates seventy-eight segments of towns in the formation of 151 assembly districts. Fifty-five of the 151 assem-

bly districts involve the segmenting of towns in the formation of assembly districts and ninety-six assembly districts are wholly within town boundaries or are formed by the combination of entire towns. The boundary lines of the town of Killingly were cut in the board plan to form assembly districts 50 and 51. The town of Watertown was divided in the formation of assembly districts 68 and 69. The town of Montville was divided into three segments in the forming of assembly districts 37, 45 and 48. The board plan divided the towns of Hamden and North Haven into five segments in the formation of assembly districts 87, 88 and 89. The choice of maintaining a thirty-six-seat senate and reducing the house from 177 to 151 seats was made deliberately because the resulting electoral district population figures best fit the equal population principle and cut the fewest town lines. In the creation of assembly and senate districts the board worked with units called block groups of the Bureau of Census report for 1970. The board decided that block groups were the smallest building blocks that could be used and that were available to them at that time. Errors involving assembly districts 104, 59, 79 and 134 crept into the plan as submitted by the board. The board intended each assembly district in the plan to be contiguous as to territory; but the description of assembly district 104 is noncontiguous, in that a very small and unpopulated spur of land in census enumeration district 67 produces discontiguity within said district. This occurred because of difficulty in reading the lines on the census maps. The board assigned all the census units of population in the state to the several assembly districts, but clerical error in transposition of statistical population data to geographical descrip-

tion misdescribes portions of assembly districts 59, 79 and 134. The secretary of the state required the order of a court of competent jurisdiction pursuant to Public Act No. 220 of the 1972 Public Acts for the promulgation of a plan of apportionment and concomitant election schedule for a regular legislative election November 7, 1972. The judgment and order of the Superior Court in this action, promulgating the plan and elections calendar for a regular election November 7, 1972, was dated August 23, 1972. The secretary of the state discontinued implementation procedures, on the advice of the attorney general that this appeal stayed that judgment and order, until the stay was terminated by further order of the Superior Court the following day, August 24, 1972. Mandating a workable elections calendar was an urgent need because of the short time remaining between August 24, 1972, and the constitutional election date of November 7, 1972.

The trial court reached the following conclusions: Block group 225 of enumeration district 67 should be added to assembly district 104 to be in accordance with its intended contiguity; clerical errors previously described as to assembly districts 59, 79 and 134 were corrected. The errata and the description of the plan were unintended and susceptible of construction and reformation to reflect the intended contiguity in assembly district 104 and the actual population assignments in the other three districts. The board plan segmented towns in the formation of assembly districts in violation of the state constitution in order to meet the federal equal population principle. The board exercised its best judgment to harmonize the town integrity principle required by the state constitution. The court concluded further that unless an election and an election calendar were

18

mandated before August 24, 1972, an election could not be held on the constitutionally prescribed date, November 7, 1972, even under the telescopic provisions of Public Act No. 220 of the 1972 Public Acts; the only option open to the trial court for a 1972 election was under the state board plan because it had already received substantial implementation by Connecticut election officials, and it contains the smallest population deviation as to districts of all five options available to the court at this late date; the elections calendar prescribed in the judgment and order of the court is reasonable and can reasonably be effectuated by any good faith effort to meet the constitutional call for the regular legislative election November 7, 1972; the plan as construed and reformed is valid and effective for interim use for this election. The court expressly declared that it did not attempt to resolve federal constitutional issues regarding the plan because those matters were before the United States Supreme Court in the appeal from the United States District Court.

In this appeal the defendants urge that the Superior Court lacked judicial capacity to make corrections in the board plan, since it would require the court to perform a legislative or administrative function in violation of article second of the Connecticut constitution which provides as follows: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit; those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." The defendants urge that the trial court in attempting to correct the plan has, in effect, purported to amend or correct a statute; that the court has no more power to correct this statute than any other statute which

the legislature passes; and that it was error for the court to attempt to do so.

"The legislative power of this state shall be vested in two distinct houses or branches; the one to be styled the senate, the other the house of representatives, and both together the general assembly. The style of their laws shall be: Be it enacted by the Senate and House of Representatives in General Assembly convened." Conn. Const., art. 3 § 1. The plan before the court was not a bill adopted by the General Assembly and submitted to the governor for signature, but rather a plan of districting promulgated by a board impaneled and acting under the provisions of the Connecticut constitution, article third, § 6, subsections (d) and (e). The board came into existence only after the failure of the legislature to enact a plan of districting. The plan is not a legislative enactment nor does it become such by virtue of the provisions of article third, § 6, subsection (e) that on publication "such plan of districting shall have the full force of law."

In the present case the plaintiffs invoke the equity powers of the court to make corrections in the plan. There can be no doubt of the power of the court to do this. "The power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged. *Maryland Committee* v. *Tawes,* 377 U.S. 656, 676 [84 S. Ct. 1442, 12 L. Ed. 2d 595] (1964); *Scranton* v. *Drew,* 379 U.S. 40 [85 S. Ct. 207, 13 L. Ed. 2d 107] (1964), citing *Butcher* v. *Bloom,* 415 Pa. 438, 203 A.2d 556 (1964); *Jackman* v. *Bodine,* 43 N.J. 453, 473, 205 A.2d 713, 724 (1964)." *Scott* v. *Germano,* 381 U.S. 407, 409, 85 S. Ct. 1525, 14 L. Ed. 2d 477.

In *Silver* v. *Brown,* 63 Cal. 2d 841, 846, 409 P.2d 689, the court construed and corrected in a reapportionment plan certain ambiguities and errors which, if given literal effect, would defeat the legislative purpose of the plan. The court recognized the difficult and peculiar problems presented by the judicial duty to enforce constitutional apportionment. "In discussing judicial remedies for malapportionment, the United States Supreme Court pointed out that '[r]emedial techniques in this new and developing area of the law will probably often differ with the circumstances of the challenged apportionment and variety of local conditions.' *Reynolds* v. *Sims,* 377 U.S. 533, 585 [84 S. Ct. 1362, 12 L. Ed. 2d 506]. In construing legislative remedies for malapportionment enacted under the pressure of impending election deadlines, courts must also adopt flexible techniques to discharge the duty they share with legislatures to secure constitutional apportionments in accordance with decisions of the United States Supreme Court. Accordingly, we conclude that . . . [the reapportionment plan] may reasonably be construed to obviate the ambiguities and technical errors in its literal provisions. As so construed . . . [the plan] meets the constitutional standards."

It is clear that the Superior Court in an appropriate case is empowered to reapportion the General Assembly when there has been failure to do so by the legislature, or when an invalid redistricting plan has been adopted, and this is so whether the plan is statutory or, as in the present case, one promulgated by a constitutionally authorized board. Since the court has the power to require or formulate a valid reapportionment plan, it certainly is empowered to correct clerical errors in the existing plan and to construe it in accordance with its original intent.

The trial court's action is in exercise of its judicial power and is not in violation of the Connecticut constitution, article second.

The defendants attack the conclusion of the trial court that the board plan "as construed and reformed is valid for interim use for the election mandated" by the Connecticut constitution for November 7, 1972. The defendants urge that the judgment of the Superior Court is erroneous in that it is in contravention of the constitutions of the United States and the state of Connecticut, and they contend that a federal District Court decision that the board plan is unconstitutional because of population deviations between districts supersedes the judgment and order of the state trial court. The record clearly indicates that the plaintiffs did not seek to relitigate the federal issues in the trial court and that the court expressly stated that it did not attempt to relitigate the federal constitutional issues, which are the subject of an appeal to the United States Supreme Court from the judgment of the three-judge District Court. The judgment and order of the court below were restricted to the correction of clerical errors in the plan and the declaration that the plan as construed and reformed is valid and effective for interim use for the election of November 7, 1972, pending ultimate determination of the federal issues embraced in the appeal to the Supreme Court of the United States.

The judgment of the United States District Court, having been stayed by the United States Supreme Court, was ineffective for the November election. There can be no question of the jurisdiction of the Superior Court to consider the plaintiffs' application to correct the board plan and declare it effective for the 1972 election, if it finds the plan in its opinion

constitutional and otherwise legal. *Cummings* v. *Meskill,* 341 F. Sup. 139 (D. Conn.). While the present action was instituted prior to *Cummings* v. *Meskill,* supra, and there can be no question of the jurisdiction of the state courts to determine reapportionment cases involving federal and state constitutional issues, we do not consider the federal constitutional issues involved at the present time for two reasons: (1) The trial court did not determine federal constitutional issues and the appeal to this court does not embrace such issues; (2) having in mind that the appeal is awaiting hearing in the Supreme Court of the United States, the intervention of this court at this time would not represent an economy of judicial effort, and could, conceivably, cause further delay in a matter of great public importance to the electorate of this state.

The defendants urge that the plan violates article third, §§ 3, 4 and 5 of the Connecticut constitution,[1] because town lines are cut excessively. Pertinent to the present inquiry are the requirements of article third, §§ 4 and 5 that "[e]ach assembly district shall be contiguous as to territory and shall elect no more than one representative"; that "[f]or

---

[1] "[Connecticut Constitution] ARTICLE THIRD. . . . SEC. 3. The senate shall consist of not less than thirty and not more than fifty members, each of whom shall be an elector residing in the senatorial district from which he is elected. Each senatorial district shall be contiguous as to territory and shall elect no more than one senator.

"SEC. 4. The house of representatives shall consist of not less than one hundred twenty-five and not more than two hundred twenty-five members, each of whom shall be an elector residing in the assembly district from which he is elected. Each assembly district shall be contiguous as to territory and shall elect no more than one representative. For the purpose of forming assembly districts no town shall be divided except for the purpose of forming assembly districts wholly within the town.

"SEC. 5. The establishment of districts in the general assembly shall be consistent with federal constitutional standards."

the purpose of forming assembly districts no town shall be divided except for the purpose of forming assembly districts within the town" and that "[t]he establishment of districts in the General Assembly shall be consistent with federal constitutional standards."

There are 169 towns in the state, ranging in size, according to the 1970 census, from the town of Union with a population of 443, to Hartford, with a population of 158,017. With a total population of 3,032,217 and 151 assembly districts, the perfect number of people in each assembly district should be 20,081. The problem confronting the board in adopting a redistricting plan with contiguous districts may be appreciated in view of the following population statistics:

| | | | | |
|---|---|---|---|---|
| Under 1000 | four towns | 10,000 – 20,081[2] | thirty-five | towns |
| 1000 – 3000 | twenty-nine towns | 20,082 – 50,000 | twenty-five | towns |
| 3000 – 5000 | thirty towns | 50,000 – 100,000 | eleven | towns |
| 5000 – 10,000 | thirty towns | over 100,000 | five | towns |

In the board plan the boundary lines of forty-seven towns are cut so that one or more portions of each of these forty-seven towns is added to another town or a portion of another town to form an assembly district. Twenty-nine of these forty-seven towns have their boundary lines cut more than once resulting in more than one portion of the town being added to another town or a portion of another town, to form an assembly district. If a segment of a town is defined as a portion of a town being used to form an assembly district not wholly within that town, the plan creates seventy-eight segments of towns in the formation of 151 assembly districts. Fifty-five of the 151 assembly districts involve the segmenting of towns in the formation of assembly

---

[2] The perfect number of people in each assembly district.

districts and ninety-six assembly districts are wholly within town boundaries or are formed by the combination of entire towns.

There are forty-one towns with populations of more than 20,081 (although the populations of some towns in this group are close to the critical figure) and each of these towns would require that its boundary be cut at least once in order to attain the perfect number of people in each district. There are 128 towns with populations of less than 20,081, many of which must have their boundaries cut, resulting in segmenting numerous towns in the interest of contiguity and equality of population. It must be recognized that the larger the political district, the fewer the town lines which must be cut. In the present case, it is apparent that it was impossible for the board to meet the equal population requirements of the federal constitution without cutting town lines. That such an impossiblity might arise was foreseen in the Connecticut constitution adopted in 1965 which provides that "[t]he establishment of districts in the general assembly shall be consistent with federal constitutional standards." Conn. Const., art. 3 § 5. Insofar as the cutting of town lines and the segmenting of towns is concerned the number of cuts or segments resulting is not per se an indication of invalidity under Connecticut constitutional provisions. We are mindful that the defendants suggest a plan wherein fewer town lines are cut and fewer segments of towns result. This plan was never submitted to the board, but was one of several offered by the defendants in the trial court and considered by it. Population deviation of the board plan, however, is plus and minus 3.9 percent, 7.8 percent over-all, and the defendants' plan has a deviation of plus 4.02 percent and minus 4.08 per-

cent, 8.1 percent over-all. It is also true that population deviation and the number of town cuts are inversely proportional and that when fewer town lines are cut the population deviation increases. The conclusion of the trial court that the board plan segmented towns in order to meet the federal equal population requirement and that it exercised its best judgment to harmonize the town integrity principle of the Connecticut constitution with the federal constitutional standards is amply supported by the subordinate facts. We conclude that the board plan does not violate state constitutional requirements. Whether federal constitutional requirements are violated by this plan will be determined by the United States Supreme Court in the case of *Gaffney* v. *Cummings,* supra, now pending before it.

The defendants also challenge the judgment of the trial court mandating an election of the General Assembly to be held on November 7, 1972. The claim is that the board plan having been declared unconstitutional by the United States District Court the Superior Court "has not only flown in the face of the law regarding the effect of the stay order [of the United States Supreme Court] but has run counter to every principle of comity that exists in the federal-state relationship." There is no merit to this contention. The stay order of the United States Supreme Court left Connecticut without any existing valid reapportionment plan. *Ajello* v. *Schaffer,* 349 F. Sup. 1168 (D. Conn.). The federal court, in fact, invited state action for the purpose of creating a valid reapportionment plan. *Cummings* v. *Meskill,* 341 F. Sup. 139, 150 (D. Conn.). In the absence of such action by the Superior Court, the electors of this state would be deprived of their constitutional right provided by article

third, § 8, of the constitution of Connecticut to elect members of the General Assembly at a general election to be held on the Tuesday after the first Monday of November in this year.

"It is enough to say now that, once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, the court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that would make unreasonable or embarrassing demands on a State in adjusting to the requirement of the court's decree. As stated by Mr. Justice Douglas, concurring in *Baker* v. *Carr* [369 U.S. 186, 250, 82 S. Ct. 691, 7 L. Ed. 2d 663], 'any relief accorded can be fashioned in the light of well-known principles of equity.'" *Reynolds* v. *Sims,* 377 U.S. 533, 585, 84 S. Ct. 1362, 12 L. Ed. 2d 506. In *Whitcomb* v. *Chavis,* 403 U.S. 124, 91 S. Ct. 1858, 29 L. Ed. 2d 363, the court was concerned chiefly with multimember districting. The procedural history of that case, how-

ever, is significantly similar to that of the present case. It arose on complaints of inadequate representation of minority groups in a multimember district in Indiana. The United States District Court determined that statewide redistricting was necessary and gave the state a definite period of time in which to enact new apportionment legislation. On the failure of the legislature to accomplish this, the federal District Court then drafted a plan of its own for use in the 1970 election. The United States Supreme Court stayed the judgment pending final action on the appeal. The effect of the stay order was that the 1970 elections were held under the districting statutes which had been held invalid, and which involved maximum population variances of 28.20 percent and 24.78 percent in the senate and house respectively, and ratios between the largest and smallest districts of 1.327:1 and 1.279:1 in those respective houses.

In *Connor* v. *Williams,* 404 U.S. 549, 92 S. Ct. 656, 30 L. Ed. 2d 704, the United States District Court found the 1971 Mississippi reapportionment plan unconstitutional because it had a 26 percent variance between the largest and smallest state senate districts. The federal District Court then drafted its own plan which had an 18.9 percent variance and this was used in the 1971 elections. The Supreme Court conceded that the District Court's plan might be unconstitutional, but it refused to invalidate the elections and order new ones. Further than that, the Supreme Court refrained from deciding the prospective validity of the plan for the 1975 elections. Its rationale was that the district court had retained jurisdiction over the counties in question and had ordered a special master to conduct proceedings to determine whether substantially equal population

districts could be drawn for the 1975 elections. "Pending completion of those proceedings, we deem it inappropriate to give further consideration to this case." Id., 551.

New York's 1968 congressional districting statute provided for equal population for thirty-one out of the state's forty-one districts, but the remaining districts were merely groupings of whole counties, with no attempt made to apportion them equally. This plan was approved by the District Court, which had struck down an earlier apportionment statute and retained jurisdiction pending corrective action by the New York legislature. The Supreme Court reversed the District Court's decision that the 1968 plan was valid, but in doing so, the court said: "We appreciate that the decision of the District Court did not rest entirely on an appraisal of the merits of the New York plan. . . . [W]hen the three-judge District Court in 1967 held the then-existing plan unconstitutional, it recognized that the imminence of the 1968 election made redistricting an unrealistic possibility and therefore said only that '[t]here are enough changes which can be superimposed on the present districts to cure the most flagrant inequalities.' [*Wells* v. *Rockefeller*] 237 F. Supp., at 992. On February 26, 1968, the New York Legislature enacted the plan before us. On March 20, 1968, the District Court approved the plan for both the 1968 and 1970 congressional elections. Since the 1968 primary election was only three months away on March 20, we cannot say that there was error in permitting the 1968 election to proceed under the plan despite its constitutional infirmities. . . . But ample time remains to promulgate a . . . [constitutional plan] before the election machinery must be set in motion for the

1970 election." *Wells* v. *Rockefeller,* 394 U.S. 542, 547, 89 S. Ct. 1234, 22 L. Ed. 2d 535.

It seems quite apparent that the stay order of the United States Supreme Court in the present case not only permitted the action of the trial court but actually invited it in recognition of the great public importance to Connecticut of a validly elected legislative body to carry out its duties. We note that federal proceedings by the plaintiffs to implement the stay order of the United States Supreme Court by ordering the board plan into interim effect for the fall, 1972, legislative elections pending disposition of the appeal in that court were concluded on July 19, 1972. The plaintiffs instituted the mandamus proceeding in the Superior Court in aid of the present action pending therein on July 27, 1972. The judgment of the Superior Court was dated August 23, 1972. Mandating a workable elections calendar was urgent because of the short time remaining before the November election.[3] The trial court properly found that there was no improper delay on the part of the plaintiffs.

The defendants urge that the General Assembly elected in 1970 be permitted to hold over pending judicial determination of the constitutionality of the state board plan. The election of these legislators was predicated on districting statutes based on the 1960 census and the population variances between districts therein provided are greater than those existing under the board plan. The trial court concluded (1) that the only option open to it for a 1972 election was under the state board

---

[3] The same urgency prompted this court to grant the motions of the parties for an expedited appeal and subsequently to announce our decision on the merits of the appeal without waiting for the filing of this opinion.

plan because it had already received substantial implementation by Connecticut election officials, and because it contains the smallest population deviation of any of the several plans available to the court; and (2) that the elections calendar prescribed in the judgment and order of the court can reasonably be effectuated by a good faith effort by election officials. We recognize and appreciate the many problems created by the decision of the United States Supreme Court in *Baker* v. *Carr,* 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663, and the difficulties of their solution, but we are mindful that these same problems must be met by every state in the union. "This Court has frequently emphasized that 'legislative reapportionment is primarily a matter for legislative consideration and determination, and . . . judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so.' *Reynolds* v. *Sims,* 377 U.S. 533, 586 [84 S. Ct. 1362, 12 L. Ed. 2d 506] (1964)." *Connor* v. *Williams,* 404 U.S. 549, 552n., 92 S. Ct. 656, 30 L. Ed. 2d 704. It is the duty of every state legislature and the courts of each state to use every effort to meet the federal constitutional requirements.

We conclude that the state board plan is valid and effective for interim use for the election scheduled for November, 1972. The substituted complaint seeks a declaratory judgment declaring the board plan to be valid and effective "for the election to be held in November, 1972 and *thereafter.*" (Emphasis supplied.) Despite the fact that the scope of the complaint was narrowed by the Superior Court the issue of final validity was raised in the trial court, even though it was not decided. We retain juris-

diction in this court pending a decision by the Supreme Court of the United States in *Gaffney* v. *Cummings,* supra, in order that appropriate state action may be taken, if necessary, consonant with federal constitutional requirements relating to equality of representation. In such event, should the General Assembly fail to act within the framework of a designated time schedule, this court will take such affirmative action as may be necessary to insure that a valid plan of apportionment may be available for the state election to be held in November, 1974.

The remaining assignments of error do not require discussion.

There is no error.

In this opinion the other judges concurred.