ANTHONY DOMBKOWSKI v. JOSEPH MESSIER ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 15—decided December 20, 1972

*Richard J. Duda,* for the appellant (named defendant).

*Leo J. McNamara,* with whom, on the brief, was *Kevin E. Booth,* for the appellee (plaintiff).

MacDonald, J.  This is an appeal by the named defendant from a judgment rendered after a trial to a judge of an application brought by the plaintiff pursuant to the provisions of § 9-328 of the General Statutes claiming aggrievement by a ruling of the moderator at an election for the office of warden.

The basic facts as set forth in the finding are undisputed and indicate that the plaintiff Anthony Dombkowski and the named defendant Joseph Messier were opposing candidates for the office of warden of the borough of Jewett City in an election held on May 3, 1971; that the moderator declared the defendant to be elected by a majority of seventeen votes; and that at a duly held recanvass a timely challenge was made by the plaintiff to the absentee ballots cast at the election by reason of the failure of the municipal clerk to comply with § 9-148, pertaining to absentee ballots.  The relevant portion of § 9-148 provides that such clerk "shall endorse over his signature, upon each outer envelope as he receives it, the date and precise time of its reception and shall make an affidavit, attesting to the accuracy of each such endorsement, and shall lodge such affidavit with the chief moderator of the election, who shall endorse the time of its receipt and return it to such clerk at the close of the election."

It is undisputed that the municipal clerk failed to comply with the statute in that (1) he did not endorse over his signature on each outer envelope, as he received it, the date and precise time of its

receipt and (2) he did not make and file with the chief moderator an affidavit attesting to the accuracy of each endorsement. It also is obvious that the chief moderator, in the absence of the filing of the affidavit, could not endorse on the affidavit the time of its receipt and return it to the municipal clerk at the close of the election. Of the absentee ballots, all of which were cast by the moderator, twenty-four were for the named defendant and four for the plaintiff and no change in the seventeen-vote win by the named defendant was made by the recanvass held on May 6, 1971. At the time of the hearing by the judge on the plaintiff's petition claiming that the absentee ballots should not be counted, it was stipulated by counsel that if they had not been counted the plaintiff would have been elected. In sustaining the plaintiff's claim the judge, in effect, concluded that the absentee ballots should not have been cast and counted, that the return of the moderator should, therefore, be corrected to indicate 367 votes for the plaintiff and 360 for the named defendant and that the plaintiff be declared elected.[1] The named defendant's assignments of error are directed primarily to these conclusions.

The named defendant contends that the failure of the municipal clerk fully to comply with the provisions of § 9-148 should not void an absentee ballot otherwise properly received by the clerk and in due course by the moderator, citing several decisions of this court in support of the general proposition that a voter should not be disfranchised because of the error or mistake of another. That this court is re-

---

[1] The fact that the finding appears to be inconsistent with respect to the total vote and to the margin of victory notwithstanding, those discrepancies do not affect the results reached by the trial court as described herein.

luctant, as are most courts, to disfranchise voters is apparent from our preliminary order and ultimate decision in the recent case of *Miller* v. *Schaffer,* 164 Conn. 8, 320 A.2d 1, involving redistricting, reapportionment and the right of the Connecticut electorate to vote in the election of November 7, 1972. The cases cited by the named defendant, however, not only are distinguishable on the facts or specific statutes involved, but also contain language indicating that we recognize that there are situations which call for at least a substantial compliance with the statutes pertaining to voting. Thus, in *Flanagan* v. *Hynes,* 75 Conn. 584, 588, 54 A. 737, this court said: "If there is to be disfranchisement, it should be because the legislature has seen fit to require it in the interest of an honest suffrage, and has expressed that requirement in unmistakable language." In *Scully* v. *Westport,* 145 Conn. 648, 651–52, 145 A.2d 742, summarizing the position adopted in the other cases cited by the named defendant, this court said: " 'Where the legislature in express terms says that a ballot shall be void for some cause, the courts must undoubtedly hold it to be void; but no voter is to be disfranchised on a doubtful construction, and statutes tending to limit the exercise of the ballot should be liberally construed in his favor. Unless a ballot comes clearly within the prohibition of some statute it should be counted, if from it the wish or will of the voter can be ascertained.' *State* v. *Bossa,* 69 Conn. 335, 341, 37 A. 977; *Flanagan* v. *Hynes,* 75 Conn. 584, 588, 54 A. 737; *Moran* v. *Bens,* 144 Conn. 27, 32, 127 A.2d 42." This statement was also quoted with approval in *Hurlbut* v. *Lemelin,* 155 Conn. 68, 77, 230 A.2d 36.

The named defendant, in effect, concedes that if a ballot is specifically voided for noncompliance

with a statute that ballot cannot be counted, but contends that § 9-148 contains no mandatory provision prohibiting the casting of such ballots. This section, however, must be considered in conjunction with § 9-146 which provides, in relevant part, that, with certain exceptions not pertinent here, "no absentee ballot shall be cast in any municipality unless it was sent to the clerk of the municipality by mail and received by him before the time specified in this section."[2] The mandatory time requirements of this section, specifying the exact day and hour before which the absentee ballot must be received by the clerk, obviously would be impossible to enforce without compliance by the municipal clerk with the requirements of § 9-148. Here this court is confronted not simply by something less than full compliance but rather by no compliance whatsoever with any one of the specific obligations imposed by § 9-148 on the municipal clerk with respect to the endorsement of absentee ballots. Had the legislature intended a construction of § 9-148 such as is proposed by the named defendant it is reasonable to assume that it would have added a provision similar to that appearing in § 9-145 which, after giving directions concerning the proper way to mark absentee ballots, concludes: "No absentee ballot shall be

---

[2] "[General Statutes] Sec. 9-146. MAILING OF BALLOT BY ELECTOR. The absentee ballot shall be mailed by the elector or applicant so that it shall be received by the clerk of the municipality in which he is qualified to vote not later than six o'clock p.m. of the day prior to the day of such election, except that, when an election is to be held on Monday, the absentee ballot shall be mailed so that it shall be received by such clerk not later than twelve o'clock, noon, of the day of such election. Except as provided in section 9-156, no absentee ballot shall be cast in any municipality unless it was sent to the clerk of the municipality by mail and received by him before the time specified in this section."

rejected as a marked ballot unless such ballot, in the opinion of the moderator, was marked in such way for the purpose of providing a means for its identification." In commenting on this provision in *Hurlbut* v. *Lemelin,* supra, 77, this court said: "In adopting the liberal provisions of § 9-145, it was the intention of the legislature to avoid disfranchisement of an elector when the name of the candidate is inserted in a voting space if there is no question as to the identity of the candidate for whom the elector directed that his ballot be cast." No such saving provision was added to § 9-148 and, in its absence, this court must conclude that failure of the municipal clerk to comply in any manner whatsoever with its provisions makes it mandatory under § 9-146 that the absentee ballots in question be declared void.

In view of the foregoing conclusion, it is not necessary to consider the claimed error in the failure of the court to conclude that there was no evidence of fraud or willful misconduct on the part of anyone since such a conclusion would not affect our disposition of this case. This court does, however, recognize that there is considerable room for fraud in absentee voting and that a failure to comply with the regulatory provisions governing absentee voting increases the opportunity for fraud. An examination of the authorities discussed in note, 97 A.L.R.2d 257, 328–31, indicates that the issue before the court has been decided differently in some jurisdictions, but this court has determined that where the legislature has provided mandatory requirements specifically designed to prevent fraud, at least a substantial compliance with such statutes is necessary. "In administering the absentee voter law it is difficult enough to keep strictly within the language of the Act. This enactment becomes an impossible

piece of legislation to supervise if election commissioners and county clerks are allowed to annex various unwritten amendments to it through custom and usage." *Kincer* v. *Holbrook,* 307 S.W.2d 922, 924 (Ky.). Where, as here, there is a complete and flagrant absence of compliance with the statute by the municipal clerk this court is bound to uphold the penalty provided, even though the result is disfranchisement of the voters whose ballots are declared void.

There is no error.

In this opinion the other judges concurred.